## John Adam Becker, Appellant, v. The Lebanon and Myerstown Street Railway Company.

*Equity—Injunction—Street railways.*

An injunction will not be awarded where the benefit to the complainant is entirely disproportionate to the injury to the respondent.

Where a landowner promptly files a bill in equity against a street railway company to prevent the construction of its railway upon a turnpike road abutting upon his property, but makes no motion for a preliminary injunction until the road has been built and is in full operation, and takes no further steps in the case for two years and one half, and it appears that, although the track was constructed without legal authority, yet by the use of proper care and skill serious changes in the grade of the turnpike were avoided and facilities furnished for crossing the track conveniently, and that the injury to the complainant is slight and may be readily compensated in damages, an injunction will not be awarded if it will inflict great inconvenience on the public and a serious loss upon the company.

*Railroad—Street railways—Act of June 19, 1871.*

The Act of June 19, 1871, P. L. 1361, relating to the power of courts of equity to inquire into the rights and franchises of corporations in suits by private individuals, was not intended to do away with or change the general principles on which equitable relief is administered. Notwithstanding the imperative " shall " in the act, an injunction is not to be granted unless a proper case for injunction be made out, in accordance with the principles and practice of equity.

The word " shall " when used by the legislature to prescribe the action of a court is usually a grant of authority, and means " may," and even if it be intended to be mandatory it must be subject to the necessary limitation that a proper case has been made out for the exercise of the power.

Argued Feb. 17, 1898. Appeal, No. 21, Jan. T., 1898, by plaintiff, from decree of C. P. Lebanon County, No. 7, Equity Docket, 1893, on bill in equity. Before STERRETT, C. J., GREEN, WILLIAMS, McCOLLUM and MITCHELL, JJ. Affirmed.

Bill in equity for an injunction.

McPHERSON, J., of the 12th judicial district, specially presiding, found the facts to be as follows:

1. Since April, 1881, the plaintiff has been, and is now, the owner in fee of a tract of land in South Lebanon township,

lying along the south side of the Berks and Dauphin turnpike, a toll road that has been in existence for many years. The land fronts upon the turnpike about 650 feet, and contains eighteen acres. Upon this tract a dwelling house, a barn and other out-buildings are situated, and the tract and dwelling are occupied by the plaintiff and his family as a farm and homestead. The dwelling is fourteen feet from the southern line of the turnpike, and is separated from the highway by a fence. The plaintiff asserts that the line of his land embraces twenty-five feet of the road, and for the purposes of this case it will be assumed that he owns the fee to that point, subject to the turnpike company's right of way. The land is rural, but lies in a thickly settled region.

2. In February, 1892, the defendant company was incorporated under the Street Railway Act of May 14, 1889, P. L. 211. Its projected line of road is described in its articles of association as beginning at Eighth and Walnut streets in the city of Lebanon, thence over certain streets in the city until the township of North Lebanon is reached at Lehman street, thence through the township along Lehman street (at this point, an unpaved township road) to the intersection of that street or road with the Berks and Dauphin turnpike at Avon, thence along the turnpike to Railroad street in the village of Myerstown, entering the townships of South Lebanon and Jackson on the way, and thence along Railroad street to the Philadelphia and Reading railroad. No part of the road has been built, however, except the section beginning at the village of Avon and ending at Railroad street in the village of Myerstown in the township of Jackson. So far as appears, permission was never asked from the city councils to build within the city, nor from the supervisors of North Lebanon township for permission to build along Lehman street. The whole of the line constructed is upon the turnpike, and the damages due to the turnpike company were assessed by proceedings in court and afterwards paid. The north rail of the track from Avon eastwardly for about a 1,000 feet, probably lies within the township of North Lebanon, and was laid after permission so to do had been refused by one of the supervisors. In Jackson township the supervisors agreed to the construction as far as Railroad street, but refused permission to build on that street. In South Lebanon township

the supervisors consented that the road should be built; and after passing the 1,000 feet above referred to, the whole of defendant's road is in South Lebanon township until a point is reached beyond the plaintiff's land.

3. The work of location and construction was begun in the summer of 1893, but before the laborers arrived at the plaintiff's land the present bill in equity was filed. It averred that the railway, if constructed in accordance with the location, would be a source of inconvenience and danger to the plaintiff and his family in passing between the turnpike and his buildings on foot or with a vehicle; that he would also be deprived of safe and easy access to his land at other points along its front; that in going to and coming from the land and the buildings his family and servants would be endangered by the operation of the railway; that he would for these reasons suffer permanent and irreparable injury. It further averred that the defendant had not paid or offered to pay or secure any damages for the injury about to be done to his property, and declared that by reason of this omission to pay or give security the construction and operation of the railway would be without authority of law. It also alleged that the street railway act was unconstitutional as to points outside the limits of cities and boroughs, because it made no provision for securing or paying damages to adjoining landowners and provided no method by which compensation for injury to their property might be ascertained and recovered. Another averment was that the railway would be constructed without warrant of law because the authorities of North Lebanon township had not consented to its construction and operation in that township. The prayers of the bill were: "First, that the defendant may be restrained by injunction from constructing its railway and from operating any car by electricity or otherwise on, upon and over the line of the said railway in front of the said land of the plaintiff; second, that the defendant be commanded, directed and enjoined to at once abate, and remove any portion of the said railway, its embankment, ties, rails and fittings, poles and wires where the same had been constructed and are located and in position on the said Berks and Dauphin turnpike road, in the said township of South Lebanon, in front of and along the land of the plaintiff as complained of, and to leave the turnpike road

in as good condition, repair and shape, (and) the plaintiff's facilities for coming and going to and from his land by way of the said turnpike road at the said place, as they were before the said railway was constructed."

The bill was served upon the defendant on June 21, 1893, but no application was made for a preliminary injunction.

After the filing and service of the bill the defendant proceeded with the construction of the railway, and laid the track upon the turnpike in front of plaintiff's land and dwelling. The road was in full operation when the defendant filed its answer on October 6, 1893. The plaintiff did not consent to the construction, but by this proceeding in equity has always been resisting the defendant's entry and the building and operation and construction of its road. The track is laid about seven feet from the southern boundary of the turnpike and occupies what was known and used as a "summer road," being a part of the highway that is not macadamized.

4. In building the railway the defendant used proper care and skill to conform at this point to the grade of the turnpike so far as it was reasonably practicable, and along plaintiff's land there has been no serious, and scarcely an injurious, change in the grade. At the entrance to the house a planked crossing has been made and is maintained by the defendant in order to facilitate passage over the track. The rails are of the ⊤ pattern, but the space between them and immediately outside has been filled up almost to the level of the rail, so that driving directly across them at the entrance to a field is accompanied with but slight inconvenience. Access to the house and fields has been interfered with very slightly, if at all. There is some risk in coming out of the house or lane, either on foot or by vehicle, because a car may be approaching, and it is therefore necessary for the pedestrian or the driver to take precaution by looking up and down the road in order to see whether a car is near at hand. At a point immediately outside of the gate there is no difficulty in seeing for about 1,000 feet in either direction. The existence of the track so near the fence causes occasional inconvenience by making it difficult and unsafe to tie horses in front of the house or elsewhere along the land, or to drive along the fence. Horses must be driven into the yard or the lane, or taken across the turnpike and tied upon the other side. It may

be also that the construction of the railway has somewhat injured the plaintiff's land by obstructing the natural surface drainage, so that pools of water now form more easily after a heavy rain and run off with greater slowness. Concerning this, however, we make no specific finding, but assume for the present purpose that to some extent the injury exists.

Whether or not the tract has been increased in value by the presence of the railway need not now be definitely found. Facility of access to the city of Lebanon two or three miles west, and to the village of Myerstown about four miles east, has certainly been much improved, but whether the selling price of the land has been influenced thereby is a matter we do not now consider.

5. The defendant's railway connects at Avon with another street railway leading directly to the city of Lebanon, and there is thus a continuous route (with a break of a few feet) between Lebanon and Myerstown. The community through which the railway passes is thickly settled and the travel is considerable; cars run twice in every hour between Avon and Myerstown, and the convenience of the public is largely promoted by the existence of this means of travel. The service has been continuously maintained since the road was built, and a large section of the community has grown accustomed to its convenience and comfort. It has become an important means of transportation for the public along its line, and for the towns which it connects. The interruption of its traffic would inflict great inconvenience upon the public and a serious loss upon the company.

The amount of damage done to the plaintiff by the construction and operation of the railway need not be determined with any attempt at precision. It is enough to say that the evidence laid before the court shows plainly that whatever injury has been done is not considerable in amount and may readily be compensated in damages.

6. The plaintiff has not been guilty of neglect in the prosecution of this case. The answer was filed in October, 1893, and practically the cause was then at issue; but neither party made an effort to bring on a hearing until March, 1896, when the plaintiff moved the court to fix a time for the hearing. Afterwards the bill was dismissed for want of prosecution, but was

reinstated by the Superior Court: Becker v. Railway Co., 4 Pa. Superior Ct. 372. Other facts upon this point appear in the report of that case, and no fact of omission was proved at the present hearing to modify in any degree the opinion then pronounced. If the plaintiff was not in fault when the bill was dismissed, he has done nothing since to change his position for the worse.

### CONCLUSIONS OF LAW.

When the defendant's railway was projected and built, the respective rights of a railway company, the abutting landowner and the local authorities over the roads in a township were still undetermined. There was much uncertainty upon the subject, and of necessity many steps were taken in the dark. Between one and two years afterward however the decision in Penna. R. R. v. Montgomery Co. Pass. Ry., 167 Pa. 62, was announced, followed by several other cases in the same volume and three or four decisions since that time. Looking backward therefore with the light thus afforded, we can see clearly that the defendant's railway was constructed in violation of the plaintiff's legal right. There was no authority to build the section actually laid down, because only a part of the whole projected line was to be built, and because some of the local authorities had refused consent to the construction. Assuming that the consent of the landowners must be obtained, whether the land abuts upon a turnpike or upon an ordinary road, the further objection existed that the plaintiff's consent had not been obtained. If the rules announced by the Supreme Count in the cases referred to had been known when the plaintiff's bill was filed, he could have had a preventive injunction for the asking, and the railway could not have been built. But during the uncertainty and confusion incident to the entry of a new subject into the domain of legal principle and procedure, the railway was laid down; and this fact with the other facts in proof has so changed the situation that the plaintiff's demand for a mandatory injunction can only be fairly considered in the light of the circumstances now existing. It is not necessary to discuss them, however, for a similar situation has been before the Supreme Court since the bill was filed and the proper rule to be applied in like cases has been already laid down: Heilman & Snavely

v. Railway Co., 175 Pa. 200.    The important facts in the controversy now before the court are practically identical with those in the case just cited.    There, as here, the bill was filed before the defendant had begun to construct its road upon the turnpike in front of the plaintiff's land; and there, as here, the plaintiffs did not ask compensation but simply prayed that the construction might be enjoined because it was unlawful. They insisted strenuously upon the defendant's want of authority, giving reasons similar to some of those now urged, and they never abandoned this ground.    Their bill contained an alternative prayer, that if the court should find that the company had a right to build its railway, an injunction should restrain it from building until compensation was secured; but as the court below and the Supreme Court agreed that the company had no right to build, it is obvious that the second prayer was never reached for consideration.    Indeed it was not raised in the hearing of the case, for the plaintiff offered no testimony on this subject and confined himself solely to the question of the defendant's legal right.    In this respect the case of Henry Heilman v. Railway Co., 175 Pa. 188, differs from the case of Heilman & Snavely, for Henry Heilman began by asking for damages and only after a considerable time so amended his bill as to bring to the front the legal questions raised in the first instance by Heilman and Snavely.    These two cases were decided on appeal at the same time, and in each decision the action of the court below in refusing a mandatory injunction was approved.

Conceiving that the cases had been confused by the Supreme Court, Heilman and Snavely made a motion for a reargument and supported it with an elaborate and forcible brief, pointing out the difference between the cases in unmistakable terms and setting forth lucidly the grounds on which they insisted that the defendant must take up its rails in front of their land.    The argument thus addressed to the Supreme Court is precisely the argument now addressed to us upon almost exactly the same facts, and it is superfluous to add that the answer to be given by this court must be the answer of the appellate tribunal.    This will be found in 180 Pa. at page 627, where the reargument was refused, Mr. Justice WILLIAMS saying, inter alia: "This company appears to have disregarded the rights of municipalities and

of private individuals, and to have forgotten or misconceived its own character and the limitations upon its powers, but it had completed its track along its entire line, a distance of six miles or more, as early as December, 1891. It has been in continuous operation ever since. It has become an important means of transportation for the public along its line, and for the towns which it connects. The interruption of its traffic would inflict great inconvenience upon the public and great loss upon it. The general situation must now be considered, and we must take into account the rights of the plaintiff and the nature and the extent of the injury of which he complains, but we must not overlook the interest of the general public, or the consequences to the defendant company of the decree asked for. Equity does not enforce a strict legal right, regardless of consequences. It is said that an injunction is of grace. This does not mean that a chancellor may grant or refuse an injunction as he pleases, but that his action is controlled by considerations of conscience. He does that which in good conscience he ought to do. The question in each case must depend upon the circumstances out of which it grows, and requires the exercise of judgment in determining the equities involved. We think the case was determined in this manner in the court below. We affirm the decree, because we are of the opinion that it was right under all the circumstances of the case."

This language is certainly clear and easy to be understood, but the plaintiffs were still not convinced that their position was apprehended by the court and accordingly presented a second petition for a reargument. In this the argument of the first petition was repeated in briefer form, and the plaintiffs again demanded as a matter of strict legal right that defendant's rails must come up in front of their land. This petition also after several months' deliberation was refused, the order being made in October of this year, and the Supreme Court's position in such circumstances must therefore be regarded as definitely and maturely taken.

So far as a court of first instance is concerned, the rule thus laid down must be followed in like cases. It is therefore decisive of the present controversy, and requires us to refuse the plaintiff's prayer for a mandatory injunction commanding the defendant to take up its rails in front of his land. But the

bill need not be dismissed. If the plaintiff desires to amend so as to ask for damages, the amendment will be permitted even at this stage of the proceeding and the dispute upon this point can then be determined either by the court or by an issue before a jury. The plaintiff may of course decline to amend; in that event the bill must be dismissed. If dismissed, however, it will be at the defendant's costs, for the decree of dismissal will be based, not on the plaintiff's want of legal right, nor of the defendant's observance of legal right, but on regard for the public interest and convenience, and on this alone.

The court entered the following decree:

Accordingly; it is ordered that on or before December 20, the plaintiff may ask leave to amend his bill in the particular just specified. Unless he makes such application, the prothonotary without further order will enter a decree that the plaintiff's bill be dismissed, and that defendant pay the costs.

December 21, 1897, plaintiff's bill dismissed at cost of defendant, as per opinion filed, December 2, 1897.

*Error assigned* among others was decree dismissing bill.

*Bassler Boyer*, for appellant.—The appellant was, and is, the owner of the land on which the railway was constructed. Its construction and operation cause him direct injury. This bill was filed and served before the railway was constructed. The facts of this case made it an ideal case for the application of the rule of law enforced by this court, through the opinions of Mr. Justice WILLIAMS in Penna. R. R. Co. v. Montgomery Co. Ry. Co., 167 Pa. 62, Lehigh Coal & Nav. Co. v. Inter-County Ry., 167 Pa. 75, Rahn Twp. v. Ry., 167 Pa. 84, Pa. R. R. v. Elec. Ry. Co., 179 Pa. 584, and which Mr. Justice MITCHELL construed and defined in Penna. R. R. v. Greensburg, Jeannette, etc., St. Ry., 176 Pa. 576.

The distinction made by the Supreme Court between the Heilman and Snavely cases and the Montgomery Co. case, is, that in the Heilman case the railway had been completed along its entire line of the chartered route since 1891; that the supervisors of North Cornwall township had since consented and that the bill sounded in damages; while in the Montgomery Co. Pass. Ry. case, the railway had not been completed and

could not be completed because of a refusal of consent by some of the local authorities, and that therefore the company had no right to any portion of the route.    The findings of fact, above quoted, will show this case to be identical with the Montgomery Co. Pass. Ry. case, with this additional fact in our favor, that it never was the intention of this company to build the entire line of its chartered route, as no consent was asked and no building attempted on the sections in the city of Lebanon and on Lehman street, in North Lebanon township.    The facts will not bear out Judge McPHERSON's conclusion, and his application of the Heilman cases, instead of the Montgomery County case, to the decision of this case, was error.

We invoke the application of section 1 of the Act of June 19, 1871, P. L. 1361.    If this statute is a law, then under the findings of the court, just recited, we are clearly entitled to a mandatory injunction, requiring the appellee to remove its railway from the land of the appellant: Edgewood R. R. Co.'s App., 79 Pa. 257 ; Hopkins v. Mfg. Co., 180 Pa. 199 ; Penna. R. R. Co.'s App., 115 Pa. 514 ; McCandless's App., 70 Pa. 210 ; Sterling's App., 111 Pa. 35.

No question of damages can arise when an injunction is asked to prevent the unauthorized act of a corporation.    Its rights and powers are defined by its charter.    If it steps an inch beyond them it is a trespasser.    It must keep within its charter or suffer removal.    Might is not right, since the act of June 19, 1871 : Penna. R. R. Co.'s App., 115 Pa. 514.

*C. H. Killinger*, with him *S. P. Light*, for appellee :  Heilman & Snavely v. Ry. Co., 175 Pa. 200 ;  Gillette v. Chester & Media Ry., 2 Dist. Rep. 450 ;  Pa. R. R. v. Braddock Elec. Ry., 1 Dist. Rep. 626 ;  Gettysburg Battlefield Assn. v. Gettysburg Elec. Ry., 2 Dist. Rep. 659 ; Berks, etc., Turnpike v. Lebanon, etc., St. Ry., 3 Dist. Rep. 55 ; Johnston v. Standard Mining Co., 148 U. S. 360 ; Sullivan v. Portland, etc., R. R., 94 U. S. 806 ;  Smith v. Clay, Ambler, 645 ;  Com. v. Bala, etc., Turnpike Co., 153 Pa. 47 ; Story v. N. Y. Elevated R. R., 90 N. Y. 122.

OPINION BY MR. JUSTICE MITCHELL, November 14, 1898 :

The learned judge below found that the defendant railway company had constructed its track on the turnpike in front of

plaintiff's land, without legal authority, though not in intentional violation of law. This is now conceded by defendant itself, and is the basis of plaintiff's bill.

Appellant plants himself firmly on his legal right, and if he were in a court of law his position would be incontestable. But he has come into a court of equity asking its aid by injunction which is of grace and not of right. The court below refused relief in this form, upon the well settled equitable principle that an injunction will not be awarded where the benefit to the complainant is entirely disproportionate to the injury to the respondent. This is the ground of the decision and raises the only question we have to consider.

By the findings it appears that the work of location and construction of the railway was commenced in the summer of 1893, but plaintiff's bill was filed and served before the company's workmen had arrived at the plaintiff's land. No application however was made for a preliminary injunction, and the road was in full operation in October, 1893, when defendant's answer was filed. Any injunction thereafter applied for and granted would necessarily be mandatory and destructive in character, but nevertheless with the case thus practically at issue, no further step was taken by plaintiff to bring it to a hearing until March, 1896, nearly two years and a half later. It was held by the Superior Court in Becker v. Ry. Co., 4 Pa. Superior Ct. 372, that the bill could not properly be dismissed for want of prosecution, after a motion for hearing had been actually made, even though late, and the learned judge below conformed to this ruling. But the delay is not without strong bearing on plaintiff's right to the aid of equity. Vigilantibus jura subveniunt is a maxim especially applicable to the remedy by injunction. On the change of conditions which took place during this period of delay the court below found specially as follows: " The community through which the railway passes is thickly settled, the travel is considerable, . . . and the convenience of the public is largely promoted by the existence of this means of travel. The service has been continuously maintained since the road was built, and a large section of the community has grown accustomed to its convenience and comfort. It has become an important means of transportation for the public along its line, and for the towns which it connects. The

interruption of its traffic would inflict great inconvenience upon the public and a serious loss upon the company." He further found that while the element of injury to the plaintiff was present, yet the evidence showed clearly that it was "not. considerable in amount, and may readily be compensated in damages."

It would be difficult to find a clearer case for the application of the equitable rule. The precedents in our own state amply sustain the conclusion reached by the learned judge below. It is sufficient to refer to the late cases on this very subject of street railways: Heilman v. Ry. Co., 175 Pa. 188; Heilman et al. v. Ry. Co., 180 Pa. 627.

The appellant relies upon Penna. R. R. Co. v. Montgomery Co. Ry. Co., 167 Pa. 62, and the group of cases in the same volume which followed it. But they were decided on the legal rights of the parties, asserted and enforced without undue delay. None of them raised the question of the chancellor's discretion. In the present case the appellant's legal rights are conceded, and the decision turns on the just applicability of the equitable remedy sought. As said by our Brother WILLIAMS in Heilman et al. v. Ry. Co., 180 Pa. 627, already cited, the chancellor "does that which in good conscience he ought to do. The question in each case must depend upon the circumstances out of which it grows, and requires the exercise of judgment in determining the equities involved." In view of the learned judge's findings in the present case, on the loss to the defendant, the inconvenience to the public, the smallness of the injury to the complainant and its easy compensability in money, he could scarcely have reached any other conclusion than that complainant, however clear his right, should be left to his remedy in damages.

The appellant further argues that under the Act of June 19, 1871, P. L. 1361, an injunction is no longer of grace, but of right, when a corporation is acting in excess of its franchise to the injury of a complainant. The language of the act is "it shall be the duty of the court . . . . to examine, inquire and ascertain whether such corporation does in fact possess the right or franchise to do the act from which such alleged injury to private rights or to the rights and franchises of other corporations results; and if such rights or franchises have not

been conferred upon such corporations such courts, if exercising equitable power, shall, by injunction, at suit of the private parties or other corporations, restrain such injurious acts." But this act, if it does anything more than declare the previous law, was intended to reinforce and make clearer the power of the courts to inquire into the rights and franchises of corporations in suits by private individuals, and perhaps in some degree to extend the class of cases in which such inquiry is open to suitors without the intervention of the commonwealth. It was not intended to do away with or change the general principles on which equitable relief is administered. Notwithstanding, therefore, the use of the imperative " shall," the injunction is not to be granted unless a proper case for injunction be made out, in accordance with the principles and practice of equity. The word " shall " when used by the legislature to a court is usually a grant of authority and means " may," and even if it be intended to be mandatory it must be subject to the necessary limitation that a proper case has been made out for the exercise of the power.

Decree affirmed, costs of this appeal to be paid by appellant.