[No. 1617.]

STATE OF NEVADA, EX REL. OFFICE SPECIALTY MANUFACTURING COMPANY, RELATOR, v. B. F. CURLER, AS JUDGE OF THE SECOND JUDICIAL DISTRICT COURT OF THE STATE OF NEVADA, IN AND FOR WASHOE COUNTY, RESPONDENT.

MANDAMUS—RELATORS—ISSUANCE OF WRIT—REVIEW OF JUDICIAL PROCEEDINGS—CONSTITUTIONAL LAW. 1. In view of the fact that Comp. Laws, 3543, provides that *mandamus* shall issue upon the affidavit and application of the party beneficially interested, the old rule of practice, according to which *mandamus* proceedings are instituted in the name of the state upon the relation of the party interested, will not be disturbed.

2. The court will never pass upon constitutional questions, except when absolutely necessary to properly dispose of the case.

3. Stats. 1901, p. 93, provided that whenever the county had, within five years previous to the act, acquired property without paying therefor, the contract for which was void under Stats. 1867, p. 59, the person from whom such land was acquired might at any time within sixty days from the approval of the act petition the district judge of the district for the appointment of appraisers as to such property, and that the district judge should hear such petition, and appoint three disinterested persons to appraise such property, etc., with a view to allowing petitioners the value of such lands: *Held*, that, where the district judge heard the petition of a person claiming the benefit of the statute, but refused to appoint the appraisers, *mandamus* would not issue to compel the judge to make such appointment, since the power to hear, given him by the statute, involved the power to determine, and, the determination upon such hearing being a judicial act, it could not be reviewed by *mandamus*.

4. The question whether the court has exceeded his power and jurisdiction cannot be determined in *mandamus*.

APPLICATION by the State, on the relation of the Office Specialty Manufacturing Company, for *mandamus* against B. F. Curler, Judge of the Second Judicial District Court, Washoe County, to compel respondent to appoint appraisers under Stats. 1901, p. 93. **Writ denied.**

The facts sufficiently appear in the opinion.

*William Woodburn*, Attorney-General, *Torreyson & Summerfield*, and *F. H. Norcross*, for Relator:

I. "The right of the relator to bring an action by *mandamus* in the name of the state has been recognized from the earliest period of our history as a state, and may be regarded

as a settled rule, which, if changed, should be done by the legislature." (*State* v. *Spicer*, (Neb.) 54 N. E. 852.)

II. "No part of a statute should be rendered nugatory, nor any language be turned to mere surplusage, if such consequences can properly be avoided." (*Torreyson* v. *Examiners*, 7 Nev. 19.)

III. In the case of *Town of Gulford* v. *Chenago Co.*, 3 Ker. 143, cited in relator's former brief and referred to in the case of *Blanding* v. *Burr*, 13 Cal. 352, there will be found a state of facts very similar to this case in so far as litigation is concerned. The following quotation from the opinion of Mr. Justice Gray is very much to the point in this case: "The court could not relieve them (the commissioners of highways) because the electors acted without statute authority, and hence there was no legal obligation upon the part of the town as such to pay. The moral obligation was not, and could not be, passed upon, by the court, for the reason that the whole question turned upon the construction of a statute. * * * The legislature being the only department of government that can provide the relief * * * must of necessity be the exclusive judges, when the interest or the honor of the government justify a tax."

*W. H. A. Pike*, for Respondent:

I. In Nevada *mandamus* is a civil proceeding, and the provisions governing the same are a part of the act entitled "An act to regulate proceedings in civil cases in the courts of justice of this state, and to repeal all other acts in relation thereto," approved March 8, 1869 (Stats. 1869, pp. 196 and 264). Section 4 of said act provides that "every action shall be prosecuted in the name of the real party in interest, except as otherwise provided in this act," and this proceeding does not come within any of the exceptions provided for. (Comp. Laws, 3099.) Section 448 of said act further provides that the writ of mandate shall issue on the application of the party beneficially interested. (Comp. Laws, 3543.) There being a plain and palpable disregard of the statutes, the motion to quash and set aside the alternative writ of mandate and dismiss the proceedings should be granted. (*Florida Cent. R. Co.* v. *State*, 31 Fla. 482; *Ottawa* v. *People*,

48 Ill. 233; *Pike Co.* v. *People*, 11 Ill. 205; *People* v. *Police Justice*, 41 Mich. 224; *People* v. *Rome R. Co.*, 103 N. Y. 95; *Portland Stoneware Co.* v. *Taylor*, 17 R. L. 33; *Smith* v. *Lawrence*, 2 So. Dak. 185; *Howard* v. *Huron*, 5 So. Dak. 529; *Heintz* v. *Monton*, 7 So. Dak. 272; *State* v. *Marston*, 6 Kan. 528; *State* v. *Jefferson Co.*, 11 Kan. 66; *Haggerty* v. *Arnold*, 13 Kan. 366; *Elser* v. *Fort North*, 27 S. W. Rep. (Tex.) 739; *People* v. *Pacheco*, 29 Cal. 210.)

II. If the court erred in its decision, the Office Specialty Manufacturing Company's remedy was by way of an appeal, and, if no appeal was provided for in the act, then the Office Specialty Company is without remedy, for the reason that, though the Supreme Court of the State of Nevada by *mandamus* may compel a district court to act, it cannot say how the court shall act; and, where it is vested with power to determine a question of fact, the duty is judicial, and, however erroneous its decision may be, it cannot be compelled by *mandamus* to alter its determination. (*Poole* v. *Kinkead*, 16 Nev. 222.)

III. The act not only seeks by compulsory arbitration, without any notice to Washoe county, to compel her to pay for the furniture, but also seeks to deprive her of the judgment of the district and supreme courts, and to subject her to the risk and expense of another contest, and that by compulsory arbitration and without any notice to Washoe county whatever. The act is clearly unconstitutional and void upon that ground. (*DeChastellux* v. *Fairchild*, 15 Pa. St. 20; *Trustees* v. *Bailey*, 238; *People* v. *Supervisors*, 16 N. Y. 424; *Moser* v. *White*, 29 Mich. 59; *Butler* v. *Supervisors*, 26 Mich. 22; *Hart* v. *Henderson*, 15 Mich. 215; *People* v. *Goldtree*, 44 Cal. 323; *Grim* v. *Weissenberg School Dist.*, 98 Am. Dec. 237.)

IV. The legislature cannot make a law for a particular case between two contracting parties contrary to existing law, and order the court to enforce it. (*Ervine's Appeal*, 55 Am. Dec. 499.)

V. The act is also unconstitutional and void, for the reason that it imposes upon the judges of the several district courts of this state the exercise of non-judicial functions, namely, the exercise of executive functions.

VI. The act is unconstitutional and void for the reason

that it is in contravention of Sections 20 and 21 of Article
III of the Constitution, in that it is special legislation regu-
lating county business. (*State* v. *Cal. M. Co.*, 15 Nev. 235;
*State* v. *Con. Va. M. Co.*, 16 Nev. 434; *Gulf Ry. Co.* v. *Ellis*,
156 U. S. 150.)

*William Woodburn*, Attorney-General, *Torreyson & Sum-
merfield*, and *F. H. Norcross*, for Relator, in reply:

I.  It is proper to bring *mandamus* proceedings in the name
of the state.   (13 Enc. Pl. & Pr. 668 and note 6; High, Ex.
Leg. Rem. 430, 430a; *State* v. *McCullough*, 3 Nev. 202; *Terri-
tory* v. *Potts*, 3 Mont. 364; 134 Mo. 304–5; 61 Ind. 584–591;
5 Ohio St. 497; 1 Okla. 42, 244, 247; *People* v. *San Francisco*,
36 Cal. 605.)

II.  The general practice in this state in *mandamus* has
been to bring the action in the name of the state, and there
have been so few exceptions that such practice ought to be
considered established.   (*State* v. *Piper*, 11 Nev. 243; *Rider*
v. *Brown*, 1 Okla. 247.)

III.  The act in question is not in contravention of Article
III of the state constitution.   It does not impose a non-judi-
cial duty upon the court, but one that is clearly judicial.
(*Tuolumne Co.* v. *Stanislaus Co.*, 6 Cal. 443.)   But even if
the duties imposed were non-judicial in their nature, the act
would not for that reason be unconstitutional.   (*Sawyer* v.
*Dooley*, 21 Nev. 396; *People* v. *Provines*, 34 Cal. 520; *Staude*
v. *Comrs.*, 61 Cal. 313; 6 Am. & Eng. Enc. Law, 2d ed. 1060.)

IV.  The point that the act of the legislature in question
is special legislation cannot be well taken.   The act is general
in form, and its language is plain.   The intention of the
legislature must be deduced from the language of the act,
and the courts cannot go beyond it.   (*State* v. *Washoe Co.*,
6 Nev. 107; *V. & T. R. R. Co.* v. *Comrs.*, 6 Nev. 68; *Bank* v.
*Quillen*, 11 Nev. 109.)

V.  Even if it could be shown that the legislature was
induced to pass the act in order to afford a remedy for relator,
it would not thereby become a special act as contemplated by
the constitution.   (*Davis* v. *Los Angeles*, 66 Cal. 42; *Riche* v.
*Franklin Co.*, 22 Wall. U. S. 67, 75.)

VI.  The legislature has power to provide different reme-

dies and modes of procedure for different classes of claims, and this power is well recognized. ( *Washoe Co.* v. *Humboldt Co.*, 14 Nev. 135; *Water Co.* v. *Lake Co.*, 45 Cal. 90; *Bank* v. *Shaber*, 55 Cal. 90; *Douglas Co.* v. *Taylor*, 50 Neb. 530; *Dale Co.* v. *Gunther*, 46 Ala. 118; 7 Am. & Eng. Enc. Law, 2d ed. note, p. 958; Comp. Laws, 2127, 2112, 2161.)

VII. The legislature has supreme power over county and municipal governments, and can direct that just claims be paid from the public treasuries, regardless of whether they are legally enforcible, and the legislature is the sole judge of what is a just claim. (7 Am. & Eng. Enc. Law, 2d ed. 970, and authorities cited in note 7; *Beals* v. *Amador Co.*, 35 Cal. 624; *Blanding* v. *Burr*, 13 Cal. 351; *Gulford* v. *Chenago Co.*, 3 Ker. 143; *Thomas* v. *Leland*, 24 Wend. 65; 18 Barb. 616.)

VIII. The legislature has the power to provide for appraisers to fix the value of property to be paid for by a county. ( *Tuolumne Co.* v. *Stanislaus Co.*, 6 Cal. 440; *People* v. *Alameda Co.*, 26 Cal. 646.)

IX. The act in question is not retroactive, and, even if it were, it would not thereby be rendered unconstitutional. "Our constitution does not forbid the passage of retroactive laws." (*Esser* v. *Spaulding*, 17 Nev. 289; 3 Am. & Eng. Enc. Law, 757, 761; *New Orleans* v. *Clark*, 95 U. S. 644.)

X. It is well settled in the law that a county or municipal corporation cannot retain the benefits of a void, or even a fraudulent, contract without being required to pay the reasonable value of the same. (*Argenti* v. *San Francisco*, 16 Cal. 275; *Auerbach* v. *Salt Lake Co.*, 63 Pac. 907; *Waitz* v. *Ormsby Co.*, 1 Nev. 370, 377; *Clarke* v. *Lyon Co.*, 8 Nev. 181.)

By the Court, MASSEY, C. J.:

In 1901 the legislature passed an act entitled "An act authorizing the adjustment and payment of certain claims against counties of this state" (Stats. 1901, p. 93), by which, briefly stated, it was provided that whenever any county had within five years prior to the passage of the act acquired any property of the value of $500 or more, for which no compensation had been received and retained by the person, firm or corporation furnishing the same, by reason of the contract for furnishing the same being adjudged void for not having

been entered into in accordance with the provisions of the act of the legislature entitled "An act supplementary to an act entitled 'An act to create a board of county commissioners in the several counties of this state and to define their duties and powers,' approved March 8, 1865," approved February 19, 1867 (Stats. 1867, p. 59), the person, firm, or corporation furnishing such property shall have the right at any time within sixty days after the approval of the act to petition the district judge of the district including the county retaining such property for the appointment of three disinterested persons as appraisers of such property, and the district judge shall hear such petition, and upon the hearing of such petition shall appoint three disinterested persons to appraise such property, and said appraisers shall within fifteen days thereafter meet and appraise such property for its reasonable value, and shall, upon such determination, certify to the district judge the amount for which they, or a majority of them, have appraised such property, and thereupon the district judge shall certify to the county auditor the amount which the appraisers have placed upon said property, and, upon the county auditor receiving the certificate of the judge, he shall draw his warrant upon the general fund of the county for the amount so certified to him, and shall deliver the same to the person entitled to it, provided that said property shall not be appraised for an amount in excess of that stipulated in the void contract.

The relator claimed the benefit of the provisions of this act, by petitioning the respondent, the district judge of the district including Washoe county, for the appointment of the appraisers named in the act. The matter was heard by the respondent upon various matters and objections raised by Washoe county, represented at the hearing by its district attorney; and upon such hearing the respondent refused to appoint the appraisers, basing his refusal upon the unconstitutionality of the act cited. Thereupon the relator brings *mandamus* in this court to compel respondent to appoint the appraisers provided for in this act, and to certify the amount of any appraisement made to the county auditor, as thereby required.

The preliminary motion of the respondent to quash the

alternative writ and dismiss the proceeding, based upon the fact, appearing upon the face of the relator's petition herein, that the writ was not issued upon the application of the person beneficially interested, but was issued upon the unauthorized application of the state, will be first considered and determined herein. While it is true that proceedings in *mandamus*, under our statute, are of a civil nature, yet an examination of the cases brought in this court shows that it has been almost the universal rule of practice, when private interests only have been involved, to entitle the action in the name of the state on the relation of the person beneficially interested; and we are not disposed at this late day to disturb this settled rule of practice concerning a mere matter of formal title, the continuation of which does not in the least affect injuriously the rights of the state or of parties seeking the enforcement of the remedy.

In reaching this conclusion we are not without ample support in the statutes and decisions of the court.

In the case of *State* v. *Gracey*, 11 Nev. 227, this court recognized this rule, and it has since been acted upon by both bench and bar.

The statute prescribing the method of procedure also justifies and supports the rule. It does not prescribe in what form the proceeding shall be entitled (Comp. Laws 1900, sec. 3543); neither does it require that the writ shall be issued upon complaint provided for in ordinary civil actions. On the contrary, that section authorizes the issuance of the writ upon affidavit and application of the party beneficially interested, which, to say the least, partakes very much of the character of a motion upon affidavit under our civil practice act; and while it is the practice to consider the affidavit for the purpose of determining whether the showing made is sufficient upon which to base the issuance of the writ, or to entitle the party to the relief demanded, yet it may well be doubted, under the provisions of another section of the civil practice act (Comp. Laws, 3602), relating to informalities and defective titles in affidavits, whether any title whatever is necessary to make it sufficient as a basis, where it appears from the affidavit that the remedy is sought by the party beneficially interested. The fact is sufficiently shown by the

affidavit in this proceeding, and the motion to quash and dismiss will therefore be denied.

Many objections have been made by the respondent against the right of relator to the peremptory writ, based upon the unconstitutionality of the Act of 1901, *supra*, but it is a well-established rule of this and other courts that constitutional questions will never be passed upon, except when absolutely necessary to properly dispose of the particular case, and, as we view this proceeding, it is unnecessary, under the rule stated, to determine whether said act is or is not constitutional.

We shall therefore confine the opinion to the consideration of the point whether this court can, in *mandamus*, compel the respondent, under the law and the facts of this record, to appoint the appraisers named in the act of 1901.

It is well to note here that it is shown by paragraph 7 of the relator's petition herein that the respondent heard the petition to appoint appraisers on the 29th day of November, 1901, and thereafter announced his decision thereon, refusing to appoint appraisers of such property, or to do anything in the premises required; assigning as a reason therefor that the said act is unconstitutional.

This is a sufficient statement of the facts considered, taken in connection with the law, upon which to base our conclusion.

A discussion of the provisions of the act is therefore necessary, in order to determine just what the duties of the respondent were, and to understand the rights and status of the relator thereunder and in this proceeding.

From the language used in the act, it is apparent that the legislature intended to accomplish certain definite purposes. It intended to validate contracts of boards of county commissioners which had been adjudged void by the courts for the reason that such contracts had been entered into in violation of the provisions of the General Statutes defining the powers and duties of such boards, and thereby create legal demands against the counties, and give an additional method for asserting such demands against them.

Whether or not the legislature of this state possesses such power over the counties as to establish legal demands arising out of contracts declared void by the court, it is not our pur-

pose either to discuss or determine; but it is well to note
that the decisions of the Supreme Court of the State of Cali-
fornia cited in support of such power are based upon a
constitution containing no such limitations upon legisla-
tive power as are found in the constitution of this state.

Assuming, therefore, that the act is constitutional, what
was the status of relator with reference to the act when it
petitioned the respondent to appoint the appraisers named?
It was seeking to establish a legal demand against Washoe
county by the method prescribed in that act. The act itself
did not fix or establish a demand of the relator against the
county, and, unless certain steps were taken and certain
things done within the time limited, the relator could have
no rights whatever against the county growing out of his
void and illegal contract. In fact, relator denies that the act
is of that special character establishing its demand against
Washoe county.

Neither can it be claimed that its demand against the
county was established when it petitioned the respondent to
appoint the appraisers. It will be observed that the act does
not require a verification of the petition, and certainly the
legislature, did not intend that the counties of this state
should become liable for any amount by the mere presenta-
tion to a district judge of an unverified petition asserting a
demand.

It will be further observed that, under the language of the
statute, the district judge to be petitioned may be in a county
other than the one sought to be charged with a liability under
the act; and while it is true the act is summary in character,
and provides a summary mode of procedure, the district judge
is required by the act to do something more than appoint
appraisers upon being asked. It requires, in direct terms,
that he shall "hear" the petition, and it cannot be doubted
that the power to hear, conferred upon a judicial officer,
carries with it the power to determine or decide. If such
was not the intention of the legislature—if the petitioning
of the district judge imposed the mere ministerial duty of
appointing appraisers—then it was useless to require a hear-
ing before appointment, and the language of the act requir-
ing a hearing is absolutely meaningless.

We realize that it is often a very difficult matter to define the boundary between acts ministerial and acts judicial, yet the language and purposes of this act have clearly defined the character of the act of the district judge as a prerequisite to his making the appointment of appraisers. He could appoint, or refuse to appoint, as he might decide after the hearing.

He exercised judicial functions. The power to appoint or not to appoint was a judicial act. It appears from relator's petition that the respondent did not refuse to hear. If he had, a different question would have been presented. He did refuse to appoint. We have, therefore, a statute authorizing a judicial officer to perform a judicial act, with an admitted showing that he had acted; and it is well settled by the decisions of this court that *mandamus* will lie to compel an officer or tribunal exercising judicial functions to act—to hear—but never for the purpose of reviewing or correcting judicial acts, however erroneous or wrong they may be. (*Cavanaugh* v. *Wright*, 2 Nev. 166; *State* v. *Wright*, 4 Nev. 119; *State* v. *Board of Comrs. of Eureka Co.*, 8 Nev. 309; *Water Co.* v. *Rives*, 14 Nev. 431; *Hoole* v. *Kinkead*, 16 Nev. 217; *Nevada Cent. R. Co.*, v. *District Court of Lander Co.*, 21 Nev. 409; *State* v. *Board of Comrs. of Lander Co.*, 22 Nev. 71; *Hardin* v. *Guthrie*, 26 Nev. 246, *ante.*)

But relator contends that the act is constitutional, and therefore the decision of the respondent holding it unconstitutional is wrong. Hence it is our duty, it insists, under the facts of the record, to compel the respondent, by the peremptory writ, to appoint the appraisers. Even if we entertained views as to the constitutionality of the act contrary to the views of the respondent, relator would not be entitled to the writ, as the issuance of the writ would require that we pass judicially upon the facts presented in the petition to the respondent, and therein exercise a power conferred exclusively upon him by the act of 1901, and, to that extent, control and direct his judgment in the premises.

Again, if respondent, under the act, had the power or authority to determine the constitutionality of the act (a power which the relator, it seems, does not controvert), then the issuance of the peremptory writ involves a review and

determination in *mandamus* of the correctness of the decision of the respondent upon that constitutional question; but, if such power does not exist (the power to determine the constitutionality of the act of 1901 in the proceeding before the respondent), then the issuance of the peremptory writ by this court requires that we consider and determine that respondent exceeded his power and jurisdiction—a question which cannot be considered and determined in *mandamus*.

Adhering to the settled rules of the law, we must hold that, under the facts of this record, *mandamus* will not lie, for the reasons given; and therefore the peremptory writ will be denied, and the proceeding dismissed.