[No. 1657.]

# THE STATE OF NEVADA, EX REL. H. C. DANGBERG, RELATOR, v. THE BOARD OF COUNTY COMMISSIONERS OF DOUGLAS COUNTY, NEVADA, RESPONDENTS.

HIGHWAYS — VACATION — STATUTES — CONSTRUCTION — BOARD OF COUNTY COMMISSIONERS—DISCRETION—PETITION.

1. Under Comp. Laws, sec. 479, as amended by Stats. 1895, p. 35, c. 37, providing that when a majority of the resident taxpayers of a road district, according to the last previous assessment roll, shall petition the county commissioners for the vacation of a public road, the board, at their next meeting after the reception of the petition, shall vacate the road, a petition failing to show that the petitioners for the vacation of a road constitute a majority of the resident taxpayers in the district according to the last assessment roll was insufficient.

2. Comp. Laws, sec. 479, as amended by Stats. 1895, p. 35, c. 37, provides that when a majority of the resident taxpayers of a road district shall petition the county commissioners for the vacation of a public road, which petition shall contain certain allegations enumerated, the county clerk shall lay the petition before the county commissioners at their next meeting, and thereupon the commissioners "shall," within thirty days thereafter, vacate the road. *Held*, that the word "shall" should be construed to mean "may," and that on the presentation of a petition signed by two persons, who constituted a majority and the only taxpayers in a road district, for the vacation of the road, the duty of the board was discretionary, and not mandatory.

PETITION by the State, on the relation of H. C. Dangberg, for writ of mandate against the Board of County Commissioners of Douglas County, to compel the vacation of a road. On demurrer to petition. **Sustained.**

The facts sufficiently appear in the opinion.

*Alfred Chartz*, for Relator.

*D. W. Virgin*, and *Torreyson & Summerfield*, for Respondents.

By the Court, TALBOT, J.:

Among other things, in his petition for writ of mandate, relator alleges "That he is a resident taxpayer of the East Fork, Genoa, and Cradlebaugh road district, situated in Douglas county, Nevada, and that at all times thereinafter mentioned he was such resident taxpayer of said road district, and that the only other resident taxpayer of said road district at all times mentioned was and is the H. F. Dangberg

Land & Live Stock Company, a corporation duly organized and existing under and by virtue of the laws of the State of Nevada. That on the 6th day of July, 1903, relator, jointly with other signers, caused to be filed in the office of the clerk of said board their certain petition praying for the vacation of that certain road lying to the east of Carson Valley, extending from the north end of the Twelve-Mile House lane, along the fence to the east of said valley to the intersection of the Cradlebaugh Road, said road being known as and called the 'Old Desert Road,' as will more fully appear by the petition thereto annexed marked 'Exhibit A,' and made part hereof, being a full, true, and correct copy of its original, said petition being made under the provisions of the act of the legislature of the State of Nevada approved March 15, 1875 (Stats. 1875, p. 159, c. 101), as amended by the legislature of the State of Nevada in 1895 (Stats. 1895, p. 35, c. 37).

"That on the 4th day of January, 1904, said board of county commissioners duly met at their office at Genoa, Douglas county, Nevada, and said application and petition was then and there duly rejected. That said Old Desert Road is a public highway, and was a public highway for a great many years last past; but that since the building up of the town of Gardnerville, lying a short distance west of said road, the same has been very little traveled, growing less and less each recurring year, and that its travel does not save those traveling it in preference to other public highway over three miles. That said Old Desert Road runs only through the lands of your relator and through the lands of the H. F. Dangberg Land & Live Stock Company, and runs through them diagonally, to the great injury of said lands, and that the almost universally traveled road covering the distance from point to point of said Old Desert Road, by going through the town of Gardnerville, follows closely sectional lines, and that the entire distance of said Old Desert Road lies within said road district. That all the signers to said petition except said relator and said H. F. Dangberg Land & Live Stock Company are residents and taxpayers of other road districts in said county, and their signatures unnecessary, and obtained in ignorance of the law and facts. Your relator further shows and avers that said board of county commissioners still refuse

to vacate said road, and that it is the duty of said board, which the law specially enjoins upon it, resulting from their office as county commissioners of said county of Douglas, State of Nevada, to vacate said Old Desert Road, and to declare it vacant, officially, by their order duly entered on their minutes, which duty they have refused and still refuse to perform; and that your relator is without any plain, speedy, or adequate remedy in the ordinary course of law."

Respondent moves to quash, and demurs to the petition on several grounds; among these, the technical objection that there is no allegation showing that the persons who petitioned the board of county commissioners to vacate the road constituted a majority of the resident taxpayers in the district according to the last assessment roll is well taken, and sufficient to invalidate the petition in its present form. Looking to the questions raised involving the merits of the controversy, it is more important to determine whether the board has any discretion when the majority of the taxpayers, if numbering only one or more, in a road district, petition to have a public highway closed. The opposing interests here are on one side the benefits which two landowners would reap from the closing of the road which runs through, and for a long time has traversed, their fields, and on the other the inconvenience which would result to the traveling public by closing the highway, and, as the petition indicates, requiring at least some people to journey three miles further, thereby depriving them of the hitherto vested right of using the shorter thoroughfare. Can the legislature or the law leave the adjustment of these conflicting interests to one of the parties concerned, who is seeking a benefit, and deprive the other of having the controversy submitted to the discretion of the board of county commissioners, the tribunal usually authorized to regulate roads in this state?

Section 479 of the Compiled Laws of Nevada, as amended in 1895 (Stats. 1895, p. 35, c. 37), provides: "At any time when a majority of the resident taxpayers of a road district, according to the last previous assessment roll, shall petition the county commissioners of their counties, for the location, opening for public use, establishment, change or vacation of any public road or highway or road to connect with any high-

way heretofore established, any street or alley in any unincorporated town in such county, setting forth in such petition the beginning, course and termination of such road, or highway, street or alley proposed to be located and opened for public use, established, changed or vacated, together with the names of the owner or owners of the land through which the same will pass, said petition may be presented to the county clerk of said county, and the clerk shall lay said petition before the board of county commissioners, at their next meeting after the reception of said petition, and thereupon said board of commissioners shall, within thirty days thereafter, proceed to locate, open to public use, establish, change or vacate such road, highway, street or alley."

Relator contends that the word "shall," used in this statute, is mandatory; that on the presentation of the petition signed by him and by the H. F. Dangberg Land & Live Stock Company, constituting a majority and the only taxpayers in the road district, the board lost all discretion in the matter, and all power to act judicially, and that it became their bounden duty to enter an order closing the road as demanded. We do not believe that such results were intended to be secured by the legislature in the passage of this act, but, if they were, we are not prepared to hold that it is within the power of the lawmaking branch of our government to confide to one of the parties concerned the adjudication of such conflicting interests, which would be the result if the respondent is required to enter the order as relator desired.

The word "shall" is sometimes construed to mean "may," and that is a better construction for it when applied under this statute to a petition seeking to close a public highway long existing. (*Kirman* v. *Powning*, 25 Nev. 393, 60 Pac. 834, 61 Pac. 1090; *Suburban Light & Power Co.* v. *City of Boston* (Mass.) 26 N. E. 447, 10 L. R. A. 499; *Becker* v. *Lebanon St. Ry. Co.*, 188 Pa. 496, 41 Atl. 612.) To otherwise conclude might lead to hardship and inconvenience to the traveling public in this and other cases. In the topography of this state one or a few landowners may constitute or become the majority of the taxpayers in road districts lying across valleys, and, if they could at will close the highways

traversing their premises, they might thereby not only make it necessary for neighbors and adjacent owners, but for people passing from other localities, to travel long distances out of their way, or over steep mountain ranges. It is of higher importance to have roads remain open when essential to the convenience of the public than to have them closed for the benefit of individuals.

There are stronger reasons for compelling the opening of a new road on the petition of the proper majority of the taxpayers, and regardless of the discretion of the board, than exist for so closing an old one. In the former case compensation must be made to the landowner for the damage caused by the opening of the road, while in closing a highway it may be assumed that he or his grantors have been paid for the right of way, or had acquired their rights subject to it, and that he will be benefited without making any remuneration to the public for the loss of the easement of which they will be deprived.

In *Suburban Light & Power Co.* v. *City of Boston, supra*, under an act providing that the mayor and aldermen shall give electric light companies a writing specifying where the posts may be located and wires run, the word "shall" was construed to mean "may," and the court sustained the action of the board in declining to grant the application of the light company. It was said, that the power given to the aldermen of a city or the selectmen of a town in regard to such matters was one to be exercised in their discretion seems to have been assumed in several cases; citing *Hill* v. *Worcester County Comrs.*, 4 Gray, 414; *Com.* v. *Boston*, 97 Mass. 555; *Pierce* v. *Drew*, 136 Mass. 75.

In *Becker* v. *Lebanon St. Ry. Co., supra*, the court held that, notwithstanding the use of the imperative "shall," an injunction is not to be granted unless a proper case be made out in accordance with the principles and practice of equity, and that the word "shall," when used by the legislature to a court, is usually a grant of authority, and means "may." Interpreting the word "shall" to mean "may," as already stated, the board were empowered to act judiciously, and if, in their judgment, they believed the closing of the highway would cause undue inconvenience to the traveling public,

they were authorized to deny the petition. It is the uniform decision of this and other courts that a subordinate body can be directed to act, but not how to act in a matter regarding which it can exercise its discretion. This court cannot substitute its judgment in place of that of the board in its denial of the petition. (*Hoole* v. *Kinkead*, 16 Nev. 222; *Hardin* v. *Guthrie*, 26 Nev. 252, 66 Pac. 744; *State* v. *Curler*, 26 Nev. 356, 67 Pac. 1075, and cases there cited; *State* v. *County Court*, 33 W. Va. 589, 11 S. E. 72.) It is unnecessary to express an opinion regarding the meaning of the statute in cases when it is sought to open new roads.

The motion to strike out is denied, the demurrer is sustained on the two grounds indicated, and, if relator desires, he may amend within thirty days.

BELKNAP, C. J.: I concur.

FITZGERALD, J., concurring:

The controversy on the merits in this proceeding is the proper interpretation of the word "shall" in a statute. The statute provides that, when certain things (naming them) are done concerning a road or highway, then the board of county commissioners shall vacate such road or highway. Petitioner claims that, since he had done all the things named and required in the statute, the board of county commissioners were compelled by the word "shall" in the statute to close the road or highway in accordance with his petition therefor. If such were the proper meaning of "shall" in the legislative intent, the word "petition" in the statute would not aptly express or describe the document that was to set the power of the board in motion. The word "demand" would be the proper word to express such meaning. After complying with the conditions stated in the statute, the applicant for the relief should demand that the board close the road or highway, and not petition that it do so. But the statute says there must be a petition, and in this case there was a petition, and not a demand.

In *Railroad Co.* v. *Hecht*, 95 U. S. Supreme Court Reports, at page 170, 24 L. Ed. 433, the doctrine applicable to this controversy is stated as follows: "As against the govern-

ment, the word 'shall,' when used in statutes, is to be construed as 'may,' unless a contrary intention is manifest." A contrary intention here is not manifest. The word "petition" and the general framing of the statute indicate that the legislative intent was not to force compulsory action on the board of county commissioners, but to give it a reasonable discretion.

Therefore I concur in the denial of the writ of mandate.