446 A.2d 300

**GLICKMAN REAL ESTATE DEVELOPMENT, Appellee,**

v.

**Richard KORF, David Notkin, Robert Fitzgerald & Robert Linett, All Jointly and Severally Liable, Appellants.**

Superior Court of Pennsylvania.

Argued Feb. 9, 1982.

Filed May 28, 1982.

Arthur C. Kellum, Pittsburgh, for appellants.

Stephen A. Glickman, Pittsburgh, for appellee.

Before BROSKY, CIRILLO and POPOVICH, JJ.

CIRILLO, Judge:

This is an appeal from an Order of the Court of Common Pleas of Allegheny County, whereby judgment in the amount of $804.00 was entered for the appellee, landlord.

The landlord filed a Complaint in Assumpsit, alleging that the appellants, tenants, breached their lease of April 24, 1978. The landlord claimed damages of $2490.00. The tenants filed an Answer and Counterclaim, alleging that the landlord failed to maintain the premises in habitable condition. The tenants sought damages of $1863.00, plus costs, interest, punitive damages and attorneys' fees. On September 7, 1979, following a hearing before a Board of Arbitrators, the tenants were awarded the sum of $800.00. The landlord appealed this award to the Court of Common Pleas. On July 15, 1980, this case was tried before the Honorable Robert A. Doyle, sitting without a jury. Judge Doyle found for the landlord in the amount of $804.00.[1] Following an untimely appeal and remand, the tenants filed *Nunc Pro Tunc* Exceptions alleging, *inter alia*, that the verdict was illegal and against the weight of the evidence. After argument before a court en banc, on February 14, 1981, the Exceptions were dismissed, and this appeal followed.

The tenants allege, on appeal, that the findings of the trial court, in favor of the landlord, were against the weight of the evidence and contrary to the law.

In April, 1978, after having inspected the premises located at 5303 Beeler Street, Pittsburgh, Pennsylvania, the tenants entered into a fifteen month lease agreement with the landlord beginning June 1, 1978. The total rent was

[1] This judgment was based upon rental in the sum of $415.00 due for each of the months of March, April and May of 1979, and $59.00 for water and sewage charges due by the tenants, for a total of $1304.00. From this amount the security deposit of $500.00, given by the tenants to the landlord at the outset of the lease, was deducted, leaving a sum of $804.00.

$6210.00, payable in installments of $415.00 per month, with a $15.00 rebate for timely payments. The tenants were also required to give the landlord a security deposit of $500.00. At the time the agreement was executed, the tenants incorporated into the lease their request that the thermostat on the stove and the gas space heaters in the bedrooms be repaired.

Throughout the term of the lease, the tenants made several other requests for repairs to the premises. In November, 1978, the Allegheny County Health Department made an inspection of the premises. Under department regulations, violations totaling 20 points renders a dwelling unfit for human habitation. Their inspection noted violations totaling 33 points and on November 21, 1978, the landlord was given notice that the premises were considered unfit for human habitation. The tenants were admitted into a rent withholding program and beginning on December 1, 1979, they made payments into an escrow account with the Mellon Bank.

By mid-December, 1978, the landlord had installed a new central heating system and had made numerous other repairs. In February, 1979, the county paid to the landlord the tenants' rent held in escrow. However, at an inspection which took place on February 21, 1979, new defects were found and the tenants were again entitled to begin rent withholding, starting on March 1, 1979. The tenants did not make these subsequent payments into escrow, rather, they stopped paying any rent whatsoever. The lower court found that the total repairs made by the landlord, in a residence which he bought for $22,500.00, amounted to over $8000.00 and included the installation of new electrical wiring, plumbing, a roof and a bathroom. The lower court also found that all of the matters noted by the Allegheny County Health Department on re-inspection were abated prior to the time that the tenants vacated the premises on May 31, 1979.

■ While it is true that an appellate court is not bound by a trial court's finding of fact which is flagrantly contrary

to the evidence [2], we do not find such an abuse by the court below in this instance.

The Pennsylvania Supreme Court, in the case of *Pugh v. Holmes*, 486 Pa. 272, 405 A.2d 897 (1979), held that the doctrine of caveat emptor is no longer applicable to residential leases, but instead, all residential leases contain an implied warranty of habitability. The Court went on to say that at a minimum, the implied warranty of habitability means that the premises must be safe and sanitary; however, there is no obligation on the part of the landlord to supply a perfect or aesthetically pleasing dwelling. *Id.*, 486 Pa. at 289, 405 A.2d 897. To be a breach of the implied warranty of habitability, the defect must be of a kind and nature which prevents the use of the dwelling for its intended purpose to provide premises fit for habitation. *Id.*, 486 Pa. at 289, 405 A.2d 897. To establish a breach of the warranty of habitability, the defect must be of a kind and nature which prevents the use of the dwelling for its intended purpose to provide premises fit for habitation. *Id.*, 486 Pa. at 289, 405 A.2d 897. To establish a breach of the warranty of habitability, a tenant must prove that he or she gave notice to the landlord of the defect or condition, that the landlord had a reasonable opportunity to make the necessary repairs and that the landlord failed to do so. *Id.*, 486 Pa. at 290, 405 A.2d 897.

In this case, the tenants gave notice to the landlord of several defects in the leased premises. This was an old dwelling being leased to the tenants and the condition of the building was reflected in the moderate rent charged by the landlord. We find that the landlord made the necessary repairs to maintain the premises in a habitable condition and did so within a reasonable time. Specifically, the tenants claim that there was no heat on the second and third floors until the middle of December, 1978. The landlord had offered to either repair the broken space heaters, which

**2.** *See: Commonwealth v. Dunklin*, 219 Pa.Super. 189, 280 A.2d 629 (1971).

could have been done promptly, or to put in a new central heating system, which would take a longer time to install. The tenants opted for the new heating system. In light of the time necessary to put in an entirely new heating system, as well as the availability of workmen to do the job, the delay in restoring heat to the premises was not unreasonable.

After an inspection of the premises, the Allegheny County Health Department gave notice to the landlord on November 21, 1978 that the premises were unfit for human habitation. Under the Rent Withholding Act[3], the tenants were entitled to pay rent into escrow if they wished to remain on the premises. The right of a tenant to pay rent

**3.** The Rent Withholding Act states:
Notwithstanding any other provision of law, or of any agreement, whether oral or in writing, whenever the Department of Licenses and Inspections of any city of the first class, or the Department of Public Safety of any city of the second class, second class A, or third class as the case may be, or any Public Health Department of any such city, or of the county in which such city is located, certifies a dwelling as unfit for human habitation, the duty of any tenant of such dwelling to pay, and the right of the landlord to collect rent shall be suspended without affecting any other terms or conditions of the landlord-tenant relationship, until the dwelling is certified as fit for human habitation or until the tenancy is terminated for any reason other than nonpayment of rent. During any period when the duty to pay rent is suspended, and the tenant continues to occupy the dwelling, the rent withheld shall be deposited by the tenant in an escrow account[1] in a bank or trust company approved by the city or county as the case may be and shall be paid to the landlord when the dwelling is certified as fit for human habitation at any time within six months from the date on which the dwelling was certified as unfit for human habitation. If, at the end of six months after the certification of a dwelling as unfit for human habitation, such dwelling has not been certified as fit for human habitation, any moneys deposited in escrow on account of continued occupancy shall be payable to the depositor, except that any funds deposited in escrow may be used, for the purpose of making such dwelling fit for human habitation and for the payment of utility services for which the landlord is obligated but which he refuses or is unable to pay. No tenant shall be evicted for any reason whatsoever while rent is deposited in escrow.
Act of January 24, 1966, P.L. (1965) 1534, § 1, amended by the Act of June 11, 1968, P.L. 159, No. 89, § 2; 35 P.S. § 1700–1.

into escrow under the Rent Withholding Act is a temporary measure to compel the owner to make the property fit for human habitation under the penalty of losing his rent for six months or having his property condemned as unsafe and unfit. *Klein v. Allegheny County Health Department*, 441 Pa. 1, 269 A.2d 647 (1969); *Newland v. Newland*, 26 Pa. Cmwlth. 519, 364 A.2d 988 (1976). Starting in December, 1978, the tenants made rent payments into escrow. By February, 1979 the County Health Department determined that the premises were fit for habitation and awarded the rent paid into escrow to the landlord. Later in February, 1979, after discovering new violations on the premises, the County Health Department again allowed the tenants to pay rent into escrow, thus starting anew the six-month withholding period provided for in the Rent Withholding Act.[4] The tenants, however, did not make these subsequent rent payments to the escrow account or to the landlord, even though they remained on the property until May 31, 1979. The Rent Withholding Act expressly states that "[d]uring any period when the duty to pay rent is suspended, and the tenant continues to occupy the dwelling, the rent withheld shall be deposited by the tenant into an escrow account..." This language makes it clear that a tenant may in no event remain in possession of premises determined to be "unfit for human habitation" without paying the required rent to the escrowee. *DePaul v. Kauffman*, 441 Pa. 386, 272 A.2d 500 (1971). Consequently the tenants clearly breached their obligation to make rental payments under the lease agreement.

Accordingly, we affirm the JUDGMENT of the court below.

4. *Klein v. Allegheny County Health Department*, supra., interpreted the Rent Withholding Act to provide for as many six month withholding periods as are necessary until a dwelling is certified as fit for habitation. Thus, in the present case, after paying the funds in the escrow account to the landlord and then finding additional defects which made the premises unfit for habitation, the Health Department properly started a new six month period during which the tenants could pay rent into escrow.