450 A.2d 51

**Dollie M. LIGHT, Administratrix of the Estate of Donald M. Light, Deceased, and Dollie M. Light, Trustee ad litem, of Dale M. Light, a minor and Dollie M. Light, Individually,**

v.

**Robert D. MILLER and Patricia A. Miller, and United States Fidelity and Guaranty Company.**

**Appeal of UNITED STATES FIDELITY AND GUARANTY COMPANY.**

Superior Court of Pennsylvania.

Argued Dec. 2, 1981.

Filed Aug. 27, 1982.

Robert J. Stewart, York, for appellant.

Lewis H. Markowitz, York, for Dollie M. Light, appellee.

Before WICKERSHAM, WIEAND and MONTEMURO, JJ.

MONTEMURO, Judge:

This appeal is taken from a declaratory judgment entered in favor of one appellee in this matter, who will be designated "petitioner" herein. Petitioner is the widow of a deceased who was killed in a motor vehicle accident in which a second woman, also an appellee and termed "appellee" herein, was the driver and the alleged tortfeasor.

The issues to be determined concern the availability of protection under the terms of an insurance policy issued by the appellant insurance company to the appellee and her husband. Specifically the policy contracts to provide a defense for appellee-tortfeasor and to pay any award returned against her according to its terms. However, when appellee applied for these benefits, appellant refused to provide either the defense or any coverage under the policy terms.

Petitioner then petitioned the lower court for a declaratory judgment as to the interpretation of the written contract between the appellant and the appellee, citing the Declaratory Judgment Act, 42 Pa. C.S.A. § 7531 *et seq*, which permits "any person interested under a written contract" to receive a determination of any question of construction arising under that instrument. The court agreed to make that determination.

A Statement of Fact (R. Document # 6) was submitted to the court and executed by all three parties, and the opinion of the trial court was based upon the stipulations as interpreted under policy language and law. The lower court found that appellee *was* entitled to a defense and to pay-

ment of any award returned against her consistent with the policy terms. We affirm the decisions of the court below.

The undisputed facts of the case as submitted by the parties are as follows. Appellee was covered by an insurance policy issued to her husband by appellant. Appellee was employed as a driver of a 1977 Chevrolet Sport Van to transport school-children. This vehicle was not furnished for personal use of appellee or her family, although she was permitted to park the vehicle at her home when she was not transporting the children.

On the morning of September 7, 1977, appellee left her home to begin transporting her charges. Before she picked up her first passenger, she had an automobile accident that resulted in the death of petitioner's husband.

Appellee's employers, the owners of the vehicle, had insurance which is conceded to be applicable to these circumstances. Petitioner seeks declaratory judgment in order to provide a second policy which would be available to cover a verdict for any award exceeding the primary policy's coverage.

The appellee's application for coverage to appellant was refused by letter of September 8, 1978, on the following reasoning:

Please be advised that under the terms of your automobile policy, No. SD–11936, which was in effect from March 16, 1977 thru March 16, 1978, there is no coverage available or applicable for this accident. The Exclusion reads as follows:

"This policy does not apply: (under the Liability Coverage ...) (h) to a nonowned automobile while such person is employed or otherwise engaged in any other business or occupation, but this exclusion does not apply to a private passenger automobile operated or occupied by the named insured or his private chauffer [sic] or domestic servent, [sic] or a utility trailer used therewith." (R. Exhibit "B")

We agree with the lower court that this vehicle falls into the "non-owned" category, as defined in the policy:

"**non-owned automobile**" means an automobile not owned by or available for the regular use of either the Named Insured or any resident of the same household, and includes, while used therewith, a home trailer not owned by the Named Insured or a utility trailer, but "non-owned automobile" does not include a temporary substitute automobile.

Appellee argues that the vehicle falls into *neither* the "owned" *nor* the "non-owned" categories because it was available to appellee for *regular use*—meaning almost daily driving in fulfillment of her employment. Whether "regular use" means merely "frequent use" or, in contrast, carries the meaning of "personal use" might appear to be an ambiguity in the language of the contract and thus open to court construction. In this instance, however, we need not decide the matter, for the parties have done that themselves. The Statement of Facts supplied to the court and executed by all parties, including counsel for appellant, states decisively at Paragraph 23:

"The vehicle was not furnished for the personal or regular use of the [appellee] or her family." (R. Exhibit 6)

Appellant's argument *contra* the above statement was made too late; appellant had already admitted as a stipulated fact that the vehicle involved was not furnished for the regular use of the appellee in a paragraph that clearly equates "regular" with "personal."

Our Supreme Court has held that admissions "contained in pleadings, stipulations and the like" are "judicial admissions" and may not be contradicted later by the party which made them at least for the case in which they were filed. See *e.g. Tops Apparel Manufacturing, Co. v. Rothman*, 430 Pa. 583, 244 A.2d 436 (1968); *Dale Manufacturing Co. v. Bressi*, 491 Pa. 493, 421 A.2d 653 (1980); *Glick v. White Motor Co.*, 458 F.2d 1287 (3 Cir. 1972).

We therefore find that appellant itself has agreed that this vehicle qualifies for the "non-owned" category of vehicle.

There is no dispute, however, that appellee in this instance *was* using the non-owned vehicle while "employed." Under **"Exclusions"** (h) of the policy, coverage is *not* available for non-owned vehicles "while . . . used by any person while such person is employed . . .", *unless* certain criteria are met, which make an exception to the exclusions. We here reiterate the pertinent part of (h), set forth *supra* in its entirety:

" . . . but this exclusion does not apply to a private passenger automobile operated . . . by the named insured or his private chauffeur or domestic servant. . . .

First, although this policy was taken out by appellee's spouse, she is clearly encompassed in the language of the policy itself as a "named insured."

**"Named Insured"** means the individual or husband and wife named in Item 1 of the declarations, but if only one individual is named the term "Named Insured" also includes his spouse, if a resident of the same household;

Therefore, the remaining question becomes that of the status of the vehicle itself. Is it a "private passenger automobile", and thus covered, or some other type of vehicle, and thus excluded?

The definition of "private passenger automobile" as set forth in the policy is as follows:

**"private passenger automobile"** means a private passenger or station wagon type automobile.

It is axiomatic that the language used in a contract is normally to be given its ordinary meaning in the absence of evidence of some special meaning. 8 Pennsylvania Law Encyclopedia § 145, at 178 and cases cited therein. Therefore, we have consulted *Webster's New Collegiate Dictionary* for the ordinary meaning of "station wagon" and "type."

Webster's defines "station wagon" as "an automobile that has an interior longer than a sedan's, has one or more rear seats readily lifted out or folded to facilitate light trucking, has no separate luggage compartment, and often has an adjustable rear window and a tailgate."

The definition of "type" most *apropos* to its use in this contract is *"shared meaning element:* a number of individuals thought of as a group because of a common quality or qualities."

The policy itself obviously contemplates a category of vehicle which is neither a sedan nor a station wagon proper, but which, as a "station wagon *type*" vehicle would presumably perform the same sorts of functions that station wagons were designed to perform; to quote *Webster's,* it would share a "common quality or qualities."

Turning to the parties own stipulated facts, we find they agreed that the following items applied to the vehicle in question: the vehicle had four wheels; the driver's seat and the seat next to it were bucket seats; there were three bench type seats behind the driver's seat, all easily removable without the use of tools. Vehicles of this type are classified as "station wagons" by the Pennsylvania Department of Transportation for motor vehicle registration purposes.

It is obvious that this vehicle shares common qualities with the station wagon: four wheels, a body longer than a sedan's, easily removable rear seats. The two vehicles resemble each other sufficiently to be grouped together by the Department of Motor Vehicles for registration purposes. It is hard to imagine what the term "station wagon-type" vehicle would include, if not this vehicle. We therefore have no problem with holding that the vehicle involved in this accident was a "station wagon-type" vehicle and was thus potentially covered, since it was driven by a named insured.

Only one question of construction now remains. Appellant argues that the vehicle was not "private" and that therefore it does not fit the exclusion which allows coverage for a named insured driving a non-owned "private passenger automobile." We do not dispute appellant's argument that "private".in the definition of "private passenger automobile" is likely to modify *both* sides of the phrase "private passenger or station wagon-type vehicle." See *Dilks v. Flohr Chevrolet, Inc.,* 411 Pa. 425, 192 A.2d 682 (1963).

What, however, "private" can mean in the context of these facts applied to the definitions of the policy itself is a mystery. A non-owned vehicle is defined as *not* furnished for "the regular use of the Named Insured or a resident of the household." The policy does not apply to a non-owned car used by a person who is "employed" or "engaged in a business or occupation" *unless* the vehicle fits the "private passenger automobile" category and is driven by a named insured. Since a non-owned car is, as we have seen, by definition *not* for "regular use" of the insured or that insured's family,[1] the ordinary "private passenger" mixture of friends, children and neighbors is eliminated by the terms of the policy itself. We must assume that the "private passengers" envisioned as riding in the vehicle would be some kind of business invitee in addition to the named insured, his chauffeur or servant.

Possibly then, "private" in this context means "not public." Turning to *Webster's, supra,* again, we find "private" defined as "restricted to the use of a particular person, group, or class." The school children transported in this instance were a particular group of persons and the vehicle was restricted to use for their transportation.

Appellant argues that the use was "commercial" and thus not "private," and queries the reasons for eliminating a taxi (a non-private passenger automobile) while permitting coverage for a station wagon-type vehicle in the non-private category. The definition points out the differences; one vehicle is for restricted use of a single group and is "private" in the sense that a private school or a private club is private; the other is a form of "public" transportation, available to any pedestrian who can pay.

If the insurance company intended to distinguish between non-paying business invitees and paying business invitees, it should have used language which accomplished that purpose. At present this court must deal with the language as

1. The parties themselves stipulated to the fact that the vehicle was not supplied for "personal or regular use." See *supra.*

presented, and we find it imprecise. Since "private" in this context cannot mean "privately-owned" nor "used for personal friends and family" and *must* include "business invitee" but does not go so far as to discuss "commercial," we agree with the lower court that it is ambiguous, and therefore is to be construed in a light most strongly supporting the insured. *Mohn v. American Casualty Co.,* 458 Pa. 576, 326 A.2d 346 (1974). Moreover, if the ambiguity exists as to an *exception* to general liability, the language must be strictly construed against the insurance company. *Celley v. Mutual Benefit Health & Accident Asso.,* 229 Pa.Super. 475, 324 A.2d 430 (1974), also, see argument in *Cohen v. Erie Indemnity Co.,* 288 Pa.Super. 445, 447, 432 A.2d 596, 597.

We therefore hold that under the facts of this case and the wording of the policy, the appellee is covered as a named insured operating in the course of her employment a private station wagon-type vehicle at the time of the motor vehicle accident which resulted in the death of petitioner's husband.

We affirm the declaratory judgment of the court below in favor of both petitioner-appellee and tortfeasor-appellee and against appellant insurance company.

Order affirmed.