473 A.2d 625

**Ruby E. SMITH,**

v.

**Lee M. BEARD, Appellant.**

Superior Court of Pennsylvania.

Argued Jan. 11, 1984.

Filed March 16, 1984.

Laurence T. Himes, Jr., York, for appellant.

John D. Miller, Jr., York, for appellee.

Before WICKERSHAM, DEL SOLE and MONTEMURO, JJ.

MONTEMURO, Judge:

This is an appeal from the Order of the Court of Common Pleas of York County directing the appellant, Lee M. Beard,

to make weekly payment for the support of Lavar L. Smith. The appellant does not contest the amount of the support order; rather, he contends that the trial court erred in adjudicating the paternity of the child without providing him with blood test groupings or a hearing. We find no merit in the appellant's contentions.

The facts relevant to the present appeal are as follows: On June 1, 1981, Lavar L. Smith was born. On June 23, 1981, the appellee filed a Complaint in the York County Court of Common Pleas seeking support payments and lying-in expenses from the appellant, whom she alleged to be the father of young Lavar. Accompanying the Complaint was an Order directing the appellant to appear at a pre-trial conference on July 24, 1981, in accordance with Pa.R.C.P. 1910.5, 42 Pa.C.S.A. The Complaint and order were sent to the appellant at his home address by "certified and restricted mail." [1]

The record is silent as to anything which may have transpired until August 12, 1981, when the appellee filed a Motion for Blood Tests pursuant to the Uniform Act on Blood Tests to Determine Paternity, 42 Pa.C.S.A. § 6131 *et seq.* On August 14, 1981, the court ordered all parties to submit to a Human Leukocyte Antigen blood test [hereinafter HLA test]. Testing was scheduled for October 6, 1981. Notice was sent to the appellant by regular mail to the same address to which the Complaint was sent. The appellant admits receiving notice, but failed to appear. [2]

1. Pa.R.C.P. 1910.6(a)(2) requires when service is made by "certified and restricted mail" that a return receipt be requested. The certified record of the lower court contains no return receipt for the complaint. The appellee claims that service was completed on July 24, 1981 when the appellant appeared for the pre-trial conference. The appellant does not admit or deny appearing at the conference, but states that there is no record of it. However, the appellant does not contest service of the complaint. These facts are stated merely to completely present the context for appellant's claims. In any event, we would conclude service was proper. See Pa.R.C.P. 1910.6 Explanatory Note–1981.

2. The appellant claims that on the day of the HLA test his truck broke down in North Carolina [he was a professional truck driver] and he

On January 13, 1982, the appellee filed a petition seeing a rule to show cause why the appellant should not be adjudicated to be the father of Lavar Smith by reason of his refusal to submit to HLA testing. On January 14, 1982, the court issued a rule to show cause, returnable twenty (20) days after service. Service was made by regular mail on January 18, 1982. The appellant did not respond.

On May 12, 1982, the appellee filed a motion to make the rule absolute. On that same day the court granted appellee's motion and issued an order adjudicating the appellant to be the father of Lavar Smith.

Thereafter, further support proceedings took place culminating in the lower court's order of March 3, 1983, directing the appellant to pay $65.00 per week, plus arrearages toward the support of Lavar Smith. This appeal followed.

■ The appellant's initial contention is that no adjudication of paternity can be made except after a hearing on the merits. The appellant relies on 42 Pa.C.S.A. § 6704(g)[3], and Pa.R.C.P. 1910.15(b)[4] in support of his position. The appellant misconstrues the import of these provisions. Apparently, he would have us hold that the right to a trial in a paternity action is an absolute right. We refuse to do so.

was unable to return. He further asserted that he telephoned the Domestic Relations Office and informed them of the circumstances. The lower court judge disbelieved the excuse after a check of the DRO records showed no telephone call had been made.

3. § 6704. *Commencement of support actions.*
(g) Trial of paternity.—Where the paternity of a child born out of wedlock is disputed, the determination of paternity shall be made by the court without a jury unless either party demands trial by jury. The trial, whether or not a trial by jury is demanded, shall be a civil trial and there shall be no right to a criminal trial on the issue of paternity. The burden of proof shall be by a preponderance of the evidence.

4. *Rule 1910.15. Paternity*
(b) If the reputed father does not execute an acknowledgement of paternity, the domestic relations officer shall terminate the conference. He shall advise the parties that there will be a trial without jury on the issue of paternity unless within ten days after the conference either party demands a trial by jury as provided by Rule 1910.28(b).

Section 6704(g) is not a guarantee of a trial in every paternity action. Rather, this section defines the nature of the proceeding; i.e. a civil, as opposed to a criminal trial. Even a cursory examination of the history of paternity actions in this jurisdiction makes this evident. *See Corra v. Coll,* 305 Pa.Super. 179, 185 n. 6, 451 A.2d 480, 483–84 n. 6 (1982); *Mansfield v. Lopez,* 288 Pa.Super. 567, 573–74 n. 4, 432 A.2d 1016, 1019–20 n. 4 (1981). The purpose of Section 6704(g) when enacted was merely to put an end to the civil-criminal dichotomy which had theretofore existed in paternity actions.

Paternity is determined in a civil action governed by the Pennsylvania Rules of Civil Procedure. 42 Pa.C.S.A. § 6704(f). *See also* Pa.R.C.P. 1910.15 Explanatory Note– 1981. As such, a trial is but one way to resolve the issue in controversy. The rules of civil procedure provide many ways for a controversy to be settled prior to trial; some of which have been utilized in paternity actions. *See Worley v. Augustine,* 310 Pa.Super. 178, 456 A.2d 558 (1983) (summary judgment); *Hughes v. Hutt,* 500 Pa. 209, 455 A.2d 623 (1983) (preliminary objections).

 The appellee herein utilized a petition and rule to obtain a determination from the lower court. We find nothing objectionable about the practice. First, the appellant had not made a demand for a jury trial. Second, he failed to appear for the HLA testing in defiance of an order of the court. At this juncture, the appellee filed her petition and rule. This Commonwealth's petition practice affords a responding party with notice and an opportunity to be heard before a rule absolute is entered. The appellant simply did not avail himself of this right. As such, the lower court had before it an unanswered petition which alleged the appellant's *refusal* to submit to HLA testing. The lower court was entitled to find that the appellant, in fact, refused to appear. Under 42 Pa.C.S.A. § 6133,[5] the

5. § 6133. Authority for test.
 In any matter subject to this subchapter in which paternity, parentage or identity of a child is a relevant fact, the court upon its own

court could therefore "resolve the question of paternity" against the appellant. The appellant's excuses, tendered over a year later at a hearing prior to the final support order, were not believed by the court. We will not substitute our own judgment of appellant's credibility for that of the lower court. *Bigham v. Wenschhof,* 295 Pa.Super. 146, 441 A.2d 391 (1982).

█ This court recently stated, in an excellent opinion by Judge CAVANAUGH, that, "[t]he need for procedural safeguards at a paternity hearing is apparent in the light of the significant liberty interest in jeopardy at that juncture. Once paternity is established, that finding is *res judicata* and cannot be relitigated in a subsequent proceeding." *Corra v. Coll, supra,* 305 Pa.Super. at 189, 451 A.2d at 486. We conclude that the safeguards inherent in our petition practice were more than sufficient to protect the appellant's rights. His own failure to take measures in accordance with the established procedures is regrettable, but it does not derogate from the propriety of those procedures.[6]

█ The appellant, in a final attempt at excusing his failure to respond to the rule to show cause, asserts that Pa.R.C.P. 1910.7 states that the defendant is not required to file any pleading. It is clear that this provision merely excuses a defendant from answering a complaint in a support action. It has no applicability to any motion or petition proceedings which may follow inasmuch as these are governed by the rules of civil procedure. 42 Pa.C.S.A. § 6704(f).

initiative or upon suggestion made by or on behalf of any person whose blood is involved may, or upon motion of any party to the action made at a time so as not to delay the proceedings unduly, shall order the mother, child and alleged father to submit to blood tests. If any party refuses to submit to such tests, the court may resolve the question of paternity, parentage or identity of a child against such party, or enforce its order if the rights of others and the interests of justice so require.

6. We will also note, without extensively analyzing the issue, that Pa.R.C.P. 1910.15(b) does not confer any substantive right to a trial; it merely sets forth the procedure and time by which a jury trial may be demanded.

■ The appellant next contends that a blood test is required to determine paternity when requested by the putative father prior to an adjudication of paternity. While the assertion is no doubt true, *see* 42 Pa.C.S.A. § 6133, it has no applicability to the facts of the case. The appellant not only did not request a blood test prior to the court's adjudication of paternity, he refused to submit to one, in defiance of a court order. This contention is patently meritless.

The appellant's final argument is that he was improperly denied both the right to a blood test and the right to a hearing. While this argument is for the most part a rehash of his previous arguments, there are two points which merit some discussion.

■ The appellant asserts that 42 Pa.C.S.A. § 6705(a) [7] provides the *sole* remedy for a defendant's failure to obey a court order, and that the adjudication of paternity was therefore improper. We disagree. Section 6705(a) is a specific grant of contempt power applicable only in support cases. *See generally,* 42 Pa.C.S.A. § 4131. It does not profess to be the exclusive remedy available to the courts or the parties. It merely states that "a defendant who willfully fails or refuses to appear ... *may* be adjudged in contempt." 42 Pa.C.S.A. § 6705(a). Section 6133, in a similar fashion, states, "[i]f any party refuses to submit to such [HLA blood] test, the court *may* resolve the question of paternity ... against such party ..." This section is not drafted as an exclusive remedy either.

■ We perceive no inconsistency in these provision, and would conclude that, insofar as they relate to the same subject matter, they are *in pari materia,* and should be construed to give effect to both provisions 1 Pa.C.S.A. § 1932.

7. § 6705. Failure of defendant to appear.
 (a) General rule.—A defendant who willfully fails or refuses to appear in response to a duly served order or other process under this subchapter may, after hearing, be adjudged in contempt and committed to prison by the court for not exceeding six months.

Appellant also contends that service of the petition and rule to show cause was inadequate because it was by regular mail alone. Again, the appellant relies on Pa.R.C.P. 1910.6, and again we find this reliance unwarranted. The aforementioned rule pertains only to service of the *complaint* in a support action. Service of other legal papers is subject to Pa.R.C.P. 233 which recognizes service by regular mail as adequate. Thus, we find service of the petition and rule was proper. Furthermore, we are bound by the lower court's disbelief of appellant's assertion that he never received the petition. *Bigham v. Wenschhof, supra.*

Having found no merit in the appellant's appeal, the order of the lower court is affirmed.