496 A.2d 16

**Marian TYLER**

v.

**Kenneth KING, Appellant.**

Superior Court of Pennsylvania.

Submitted Aug. 23, 1984.

Filed July 12, 1985.

80

Michael S. Bomstein, Philadelphia, for appellant.

Jane C. Greenspan, Philadelphia, Assistant District Attorney, for appellee.

Before CIRILLO, OLSZEWSKI and BECK, JJ.

CIRILLO, Judge:

Appellant, Kenneth King, appeals the order of the Court of Common Pleas of Philadelphia County declaring him to be the father of Christina Tyler, daughter of appellee, Marian Tyler. Appellant seeks a new trial or reversal of the finding of paternity. We find no error, and affirm.

Appellee filed a complaint for support for her daughter, born April 10, 1981. At the hearing, appellant was granted a continuance so that Human Leukocyte Antigen (HLA) blood tests could be taken of himself, appellee and the child, to determine the probability of his having fathered the child. Appellant stipulated that the test results were admissible as some evidence of paternity.

Appellee testified that she met appellant on July 25, 1980, and engaged in intercourse with him that night at his home. She also stated that on several occasions from April to July, 1980, she engaged in sex with another man. Appellant claimed that he did not meet appellee until October, 1980, and that she could not have spent the night of July 25 at his home because at that time his girlfriend and their daughter were living there. On cross-examination, appellee testified that she had lied to appellant about her use of a contraceptive, and that she had told a friend of appellant that another man may have fathered the child.

At the close of appellee's case, appellant stated his belief that proper interpretation of HLA test results was a matter of statistics, and that these results lacked legal significance without expert testimony. However, he did not object to their admission into evidence. He then moved to dismiss, on the ground that the Commonwealth had not presented proper statistical evidence, in the form of expert testimony, to explain the test results. The motion was denied.

The court found appellant to be the father of appellee's child. Following this determination, an order for support was entered.[1]

Appellant presents four questions: 1) Did the hearing court err in finding that appellant waived his right to cross-examine blood test examiners or a statistician to explain the test results? 2) Did the hearing court err in holding that appellant was not entitled to the benefit of *Turek v. Hardy,* 312 Pa.Super. 158, 458 A.2d 562 (1983)? 3) Did the hearing court deny appellant procedural due pro-

---

1. Pa.R.Civ.P. 1910.15 allows appeal of "any issue of paternity" from a final order of support.

cess when it admitted the test results without allowing appellant the opportunity to confront and cross-examine appropriate experts? 4) Did the hearing court err by reaching factual conclusions contrary to the weight of the credible evidence?

We will dispose of appellant's first and third questions together, as both concern his right to cross-examine witnesses.

Appellant relies on Section 6134 of the Uniform Act on Blood Tests to Determine Paternity,[2] which states:

**Selection of experts**

The tests shall be made by experts qualified as examiners of blood types, who shall be appointed by the court. The experts shall be called by the court as witnesses to testify to their findings and shall be subject to cross-examination by the parties. Any party or person at whose suggestion the tests have been ordered may demand that other experts qualified as examiners of blood types perform independent tests under order of court, the results of which may be offered in evidence. The number and qualifications of such experts shall be determined by the court.

Appellant argues that the court is obliged, in all cases where blood tests are involved in a paternity question, to call those persons who conducted the tests. He further claims that his stipulation to the admissibility of the results at issue was not a waiver of the Act's protections. We find his argument to be without merit.

 Appellant presents us with a simple matter of statutory construction, which is for the court's resolution. *Commonwealth, Higher Education Assistance Agency v. Abington Memorial Hospital*, 478 Pa. 514, 387 A.2d 440 (1978). He emphasizzes that Section 6134 uses mandatory language when it states that "experts shall be called by the court." However, it has long been the rule in Pennsylvania

2. Act of July 9, 1976, P.L. 586, No. 142, effective June 28, 1978, *as amended* 42 Pa.C.S.A. §§ 6131–6137 (originally enacted as Act of July 13, 1961, P.L. 587, No. 286) (hereafter "Uniform Act").

that the word "shall," although usually mandatory or imperative when used in a statute, may nonetheless be directory or permissive, depending upon the Legislature's intent; we ascertain this intent after reviewing the entire act, its nature, object and purpose, the respective consequences of various constructions of the particular statute, and after determining whether the action allegedly mandated by the statute is the essence of the thing to be done pursuant to it. *Francis v. Corleto*, 418 Pa. 417, 211 A.2d 503 (1965); *Division 85, Amalgamated Transit Union v. Port Authority of Allegheny County*, 417 Pa. 299, 208 A.2d 271 (1965); *Prichard v. School District of Willistown Township*, 394 Pa. 489, 147 A.2d 380 (1959); *Pennsylvania R. Co. v. Board of Revision of Taxes*, 372 Pa. 468, 93 A.2d 679 (1953); *In re Nomination Papers of American Labor Party*, 352 Pa. 576, 44 A.2d 48 (1945); *National Transit Co. v. Boardman*, 328 Pa. 450, 197 A. 239 (1938); *Commonwealth v. Kowell*, 209 Pa.Super. 386, 228 A.2d 50 (1967); *Wielebinski v. Unemployment Compensation Board of Review*, 197 Pa. Super. 292, 178 A.2d 783 (1962); *County of Allegheny v. Pennsylvania Public Utility Commission*, 192 Pa.Super. 100, 159 A.2d 227 (1960); *Borough of Pleasant Hills v. Carroll*, 182 Pa.Super. 102, 125 A.2d 466 (1956) (allocatur denied); *Turner v. Unemployment Compensation Board of Review*, 163 Pa.Super. 168, 60 A.2d 583 (1948); *Appeal of Baldwin*, 153 Pa.Super. 358, 33 A.2d 773 (1943); *Kuzmen v. Kamien*, 139 Pa.Super. 538, 12 A.2d 471 (1940). *See also Commonwealth v. Hess*, 270 Pa.Super. 501, 411 A.2d 830 (1979), *appeal dismissed*, 499 Pa. 206, 452 A.2d 1011 (1982); *Commonwealth, Human Relations Commission v. Transit Casualty Insurance Co.*, 478 Pa. 430, 387 A.2d 58 (1978); *Sohmer v. Sohmer*, 318 Pa.Super. 500, 465 A.2d 665 (1983); *Fireman's Fund Insurance Co. v. Nationwide Mutual Insurance Co.*, 317 Pa.Super. 497, 464 A.2d 431 (1983).

In particular, where a statute's mandatory language pertains to the action of a court, it is usually a grant of authority. *Anderson's Appeal*, 215 Pa. 119, 64 A. 443

(1906); *Becker v. Lebanon & M. St. Ry. Co.*, 188 Pa. 484, 41 A. 612 (1898). *Compare Morrison v. Unemployment Compensation Board of Review*, 141 Pa.Super. 256, 15 A.2d 391 (1940) (statute purporting to require a deliberative body to render a discretionary decision within a stated time will be construed to be directory). The statute at issue here clearly concerns the power of the court, by presuming to oblige the court to call specified witnesses. It therefore can be construed on this basis alone as merely granting the court the authority to do so.

In addition, the intent and purpose of the Act are twofold. First, the Legislature believed that admission of blood test evidence would be helpful in suits where paternity is an issue, because these tests permit scientifically reliable exclusion of a given man from the group of those who could be a certain child's father. *See Hummel v. Smith*, 301 Pa.Super. 276, 286–87, 447 A.2d 965, 970 (1982) (Beck, J., concurring). However, Section 6134 seeks to protect putative fathers from adverse determinations based on blood test results not sufficiently reliable or adequately administered, and from the undue impression which "expert" evidence can make on a trier's mind. The Act's purpose is thus the same as the rule for expert testimony: to allow qualified "opinion" testimony in order to explain to the trier a subject matter which is beyond the experience and comprehension of the ordinary layman. *See In re Japanese Electronic Products Antitrust Litigation*, 723 F.2d 238 (3d Cir.1983); *Zenith Radio Corporation v. Matsushita Electric Industrial Co., Ltd.*, 505 F.Supp. 1313 (E.D.Pa.1980); *Hamil v. Bashline*, 481 Pa. 256, 392 A.2d 1280 (1978); *Reardon v. Meehan*, 424 Pa. 460, 227 A.2d 667 (1967); *Swartz v. General Electric Co.*, 327 Pa.Super. 58, 474 A.2d 1172 (1984). Where the expert witness performed the test or experiment at issue, as is the case under Section 6134, calling him to testify allows a party to inquire into the circumstances surrounding the test, the factors influencing its result, the variables which could affect the result, and the procedures used in recording and preserving the result.

Parties are thus protected from any prejudice which may occur from the admission of scientific data which was not accurately gathered, analyzed or recorded.

However, we disagree with appellant that Section 6134 requires the court to call the described experts in all cases. First, the Act itself allows paternity determinations to be made without blood tests. Section 6133 states that "[i]f any party refuses to submit to such tests, the court may resolve the question of paternity, parentage or identity of a child *against* such party, or enforce its order if the rights of others and the interests of justice so require" (emphasis added). *See also Smith v. Beard,* 326 Pa.Super. 95, 473 A.2d 625 (1984). In addition, expert testimony is not the sole or paramount form of evidence used in paternity cases. Section 6132(b)(3), governing the use of blood tests in criminal proceedings, allows the court to direct a verdict for the defendant "upon the conclusions of all the experts under the provisions of Section 6136 (relating to effect of test results), *otherwise* the case shall be submitted for determination upon *all* the evidence" (emphasis added). Section 6136, in turn, provides that "[i]f the experts disagree in their findings or conclusions, the question shall be submitted upon *all* the evidence" (emphasis added).

These sections of the Uniform Act demonstrate the Legislature's second intent, that the trier of fact decide paternity questions on all the evidence, not just on the pronouncements of experts. This is true even in a criminal prosecution, where the burden of proof is far higher and the defendant has such significant interests at stake. Logically, a "trier of fact" would be unnecessary in paternity cases if the verdicts were to be reached by the witnesses.

One final consideration supports our conclusion that Section 6134 does not mandate the calling of experts in every paternity case.

Such a requirement would give the parties to a paternity case a protection unavailable to other litigants. The defendant in a paternity case is entitled without question to certain

rights and safeguards. *See Corra v. Coll,* 305 Pa.Super. 179, 451 A.2d 480 (1982) (due process entitles indigent paternity defendant to appointed counsel); *Parenti v. Parenti,* 263 Pa.Super. 282, 397 A.2d 1210 (1979) (upon motion, party is entitled to court-ordered blood tests); *but see Beard, supra* (right to trial in paternity case is not absolute). However, as we will discuss more fully later in this opinion, a party may stipulate to the admission of a piece of evidence, thereby waiving the protections afforded by the rules of evidence. Under appellant's construction of Section 6134, a party in a paternity case would be insulated from the waivers incurred by other litigants who stipulate to admissibility.

■ We conclude, from the rules of statutory construction and the text of the Uniform Act, that expert testimony on blood tests is not an absolute, unwaivable requirement in every paternity case. Rather, the need for it will arise from the particular circumstances of the litigation. Where the alleged father denies paternity and challenges the admission of the plaintiff's scientific or medical evidence, experts appointed under Section 6134 will be called to testify. Here, however, appellant's stipulation is a circumstance we must consider.

■ The Pennsylvania rule on stipulations is long-settled: parties may bind themselves, even by a statement made in court, on matters relating to individual rights and obligations, so long as their stipulations do not affect the court's jurisdiction or due order of business. *Foote v. Maryland Casualty Co.,* 409 Pa. 307, 186 A.2d 255 (1962); *Foley Brothers, Inc. v. Commonwealth, Department of Highways,* 400 Pa. 584, 163 A.2d 80 (1960); *Stinner v. Stinner,* 300 Pa.Super. 351, 446 A.2d 651 (1982); *Zvonik v. Zvonik,* 291 Pa.Super. 309, 435 A.2d 1236 (1981); *Kardibin v. Associated Hardware,* 284 Pa.Super. 586, 426 A.2d 649 (1981); *Marmara v. Rawle,* 264 Pa.Super. 229, 399 A.2d 750 (1979); *Chamberlin of Pittsburgh, Inc. v. Fort Pitt Chemical Co.,* 237 Pa.Super. 528, 352 A.2d 176 (1975) (allocatur denied). Stipulations to the admissibility of evidence are

common. They do not affect jurisdiction, nor interfere with judicial business or convenience; instead, they aid the court by saving it time which would otherwise be spent on determining admissibility.

The courts employ a contracts-law analysis to interpret stipulations, so that the intent of the parties is controlling. *Longenecker v. Matway*, 315 Pa.Super. 411, 416, 462 A.2d 261, 263 (1983). The language of a stipulation, like that of a contract, is construed against the drafter. *See Central Transportation, Inc. v. Board of Assessment Appeals of Cambria County*, 490 Pa. 486, 417 A.2d 144 (1980). The court will hold a party bound to his stipulation: concessions made in stipulations are judicial admissions, and accordingly may not later in the proceeding be contradicted by the party who made them. *Tops Apparel Manufacturing Co. v. Rothman*, 430 Pa. 583, 587, 244 A.2d 436, 438 (1968); *Light v. Miller*, 303 Pa.Super. 527, 530, 450 A.2d 51, 53 (1982). *See also Cole v. Altieri*, 534 F.Supp. 165 (E.D. Pa.1981); *Alley v. Comella*, 241 F.Supp. 1016 (W.D.Pa. 1965); *Dale Manufacturing Co. v. Bressi*, 491 Pa. 493, 421 A.2d 653 (1980); *In re Estate of Monheim*, 451 Pa. 489, 304 A.2d 115 (1973); *Prudential Property & Casualty Insurance Co. v. Falligan*, 335 Pa.Super. 195, 484 A.2d 88 (1984); *Aetna Electroplating Co., Inc. v. Jenkins*, 335 Pa.Super. 283, 484 A.2d 134 (1984); *Hachick v. Kobelak*, 259 Pa.Super. 13, 393 A.2d 692 (1978); *Commonwealth v. Barksdale*, 219 Pa.Super. 444, 281 A.2d 703 (1971) (allocatur denied).

Applying these rules, we find that appellant drafted the stipulation at issue by way of three separate statements at the paternity hearing. Appellant requested a continuance so that blood tests could be performed, and the Commonwealth [3] agreed:

[Assistant District Attorney]:

3. The Commonwealth appeared in the case pursuant to 42 Pa.C.S. § 6711 (the Civil Procedural Support Law), which states that the district attorney "shall at all times aid in the enforcement of the duty of support." *See* 42 Pa.C.S. §§ 6701–6713.

All right. And we are willing to agree that if he has it done it is admissible, the findings are admissible in court without any chain of custody, et cetera, and he has agreed to say—

[Appellant's counsel]:

We would so stipulate, not that they are dispositive, but rather that they are admissible for the Court to draw such inference.

When appellee moved to admit the test results, the following discussion occurred:

[Appellant's counsel]:

As indicated earlier in the record, we have no objection to the admissibility of the test, with this specific proviso: that we believe that it is a matter of statistical evidence as to the proper interpretation of the results. And absent testimony by an expert witness, these results do not have a legal significance.

[The Court]:

All right now. Do I understand that there is no objection to the marking of the HLA blood studies result as P-1, and the birth record P-2? And there is further no objection that they be admitted into evidence. Is that correct ...?

[Appellant's counsel]:

Yes, Sir.

At the close of appellee's case, appellant moved to dismiss, stating in part:

[Appellant's counsel]:

. . . .

In addition, Your Honor, we would submit, again absent proper statistical evidence as to the validity of the HLA paternity testing report, its meaning is at best questionable. However, if there had been a statistician offered by the Commonwealth to explain to the Court the significance of this, we believe that upon cross-examination a number of important things would have developed....

Appellant concedes that he did not object to admission of the test report. However, he argues that the results, although admissible, were meaningless without expert testimony. Analogizing the results to business records, he further argues that conceding admissibility does not waive the requirement of a proper evidentiary foundation.

Appellant confuses the meaning of admissibility. Admissibility is determined not for a class of documents, but for each individual document, and proper foundation is a part of that determination. Hence, when a party concedes admissibility, the need for showing a proper foundation disappears. In *Edwards v. Donley*, 223 Pa.Super. 71, 297 A.2d 149 (1972) (allocatur denied), the defendant stipulated to the admissibility of the plaintiff's medical bills, but objected at the close of the plaintiff's case to their introduction. This Court held that the stipulation relieved the plaintiff of the burden he would otherwise have carried before the bills could be admitted. *Id.*, 223 Pa.Superior Ct. at 73–74, 297 A.2d at 150. While the defendant could reserve the right to question the completeness and reasonableness of the plaintiff's bills, that right was not exercised by merely objecting to their introduction. *Id.*, 223 Pa.Superior Ct. at 75, 297 A.2d at 151.

Similarly, appellant's "proviso" here regarding admission of the test results did not condition their admission on the presentation of expert testimony, nor did he properly object to it. His colloquy in support of the motion to dismiss raised no legal arguments against admission of the results, but rather attacked their value, calling them "questionable" without statistical evidence and claiming that cross-examination would have revealed several weaknesses in their merit. Finally, appellant objects to the hearing court's "misuse" of the test results. That "misuse" was simply the court's decision in favor of appellee, based in part on the test results which appellant agreed were admissible.

Appellant's criticisms of the results go not to their legal admissibility but to the weight he believes a factfinder

should accord them. Weight and admissibility are separate issues, and we will not find the hearing court in error for placing more weight on admissible evidence than appellant would prefer, especially where appellant himself agreed to its admission.

Appellant also claims that the hearing court, insofar as it considered the test report, violated appellant's right to due process by denying him the right to confront and cross-examine relevant experts. In support, appellant cites *Commonwealth ex rel. Valentine v. Strongel*, 246 Pa.Super. 466, 371 A.2d 931 (1977), *Wood v. Tucker*, 231 Pa.Super. 461, 332 A.2d 191 (1974), and *Goldberg v. Kelly*, 397 U.S. 254, 90 S.Ct. 1011, 25 L.Ed.2d 287 (1970).

Appellant's reliance on *Valentine* and *Wood* is misplaced. In *Wood*, the appellant in a child custody dispute argued that the trial court erred in relying on information dehors the record. This Court agreed, citing the rule that a court may not consider a report without examining the person who made it. 231 Pa.Super. at 463, 332 A.2d at 192. However, the cases following this rule require testimony by a report's maker in child custody cases, given the crucial family interests at stake and the court's paramount duty to discern and safeguard the best interest of the child. *Robert H.H. v. May L.H.*, 293 Pa.Super. 431, 439 A.2d 187 (1982); *In re Custody of White*, 270 Pa.Super. 165, 411 A.2d 231 (1979). We did note in *Wood* that the use of information dehors the record denies a litigant his right to the in-court presentation of evidence and the opportunity to confront and cross-examine adverse witnesses. 231 Pa.Super. at 463–64, 332 A.2d at 192.

In *Valentine*, the petitioner raised the issue appellant raises now, that the 1961 Uniform Act required testimony by, including cross-examination of, experts. The experts in *Valentine* had sent written reports to the court and the parties, but presented no testimony at trial. Citing *Wood*, we held that, because of this,

there is absolutely no evidence in the record of the occurrence or result of any blood test. In its opinion the

lower court stated that on the basis of blood tests performed, appellant could not be excluded as the father. It is apparent from the trial court's opinion that it considered the blood tests prior to making its decision. Clearly it was error for the trial court to use evidence dehors the record to make its determinations.

246 Pa.Super. at 470, 371 A.2d at 933. We did not in *Valentine* reach the issue of whether the Uniform Act's provision for expert witnesses is mandatory.

Both *Wood* and *Valentine* are distinguishable from the instant case. In both of those cases, the trial court considered evidence which was not in the record and therefore denied the appellants their right to confrontation and cross-examination. *See also Coble v. Coble*, 323 Pa.Super. 445, 447–48, 470 A.2d 1002, 1003–04 (1984); *Shaffer v. Gaal*, 312 Pa.Super. 399, 458 A.2d 1020 (1983). Here, by contrast, the test results were on record, pursuant to the stipulation and the reading of them into the record by appellee's counsel.

 We recognize that appellant has procedural and substantive rights. *See Beard, Corra* and *Parenti, supra.* However, a party may waive constitutional rights designed for his benefit. *Kardibin,* 284 Pa.Super. at 600, 426 A.2d at 656–57. The right to confront and cross-examine does not require that the parties in every case cross-examine each adverse witness, but that they have the opportunity to do so. *Goldberg,* 397 U.S. at 269, 90 S.Ct. at 1021, 25 L.Ed.2d at 300. This right may therefore be waived, even in a criminal case. *See Commonwealth v. Harmes,* 255 Pa.Super. 147, 386 A.2d 551 (1978). Appellant had the required opportunity to confront and cross-examine the technicians who administered and analyzed the blood tests and reported their results. That he forewent this opportunity is no error on the part of the hearing court.

 Nor do we find merit in appellant's contention as to what "cross-examination" of a statistician would have revealed about the reliability of HLA tests. Assuming appellant meant a statistician distinct from the persons who

performed the test,[4] we find no indication in the record that he was prevented from introducing testimony, by an expert of his own, on this subject. Appellant bases this argument on his claim that the hearing court, by admitting the evidence to which he had stipulated, violated his right to confrontation and cross-examination. A party may not complain when he waives his right to present evidence in his favor by choosing not to do so. *See Lowenschuss v. Lowenschuss,* 323 Pa.Super. 381, 470 A.2d 970 (1983).

Appellant next argues that he is entitled to the benefit of our holding in *Turek, supra,* which was decided after the hearing of the instant case. Given our decision on appellant's first and third questions for review, we need not reach this issue. However, we will consider it for the purpose of encouraging competent appellate advocacy.

In *Turek,* as in the case at bar, the defendant in a paternity suit requested blood tests, and stipulated that the results were admissible. He then objected to the introduction of the results and of expert testimony. We held that HLA test results were "admissible under the current state of the law" as some evidence of paternity. 312 Pa.Super. at 160, 458 A.2d at 563. We also set forth some foundation guidelines which "[t]he party seeking to affirmatively use the HLA results" should show before those results are admitted. *Id.,* 312 Pa.Superior Ct. at 164, 458 A.2d at 565. However, we did not consider the effect of the parties' stipulation on this requirement.

Appellant cannot insist that he is "entitled" to the *Turek* holding. First, *Turek* allowed the admission of HLA test results as some evidence of paternity, where appellant

---

**4.** In spite of appellant's argument based on Section 6134, which refers to the "experts" who actually took, analyzed and reported the blood tests, appellant is unclear whether he wanted testimony from these persons or simply from someone qualified to testify about HLA tests and the statistical probabilities involved in their interpretation. His third question presented refers to "blood test examiners *or* a statistician" (emphasis added). In addition, Section 6134 allows the party who requested blood tests to "demand" that other, independent tests be made for comparison. Appellant waived this provision by accepting the first test as probative of paternity.

challenges their admission in his case. Second, *Turek* did not announce that HLA results were admissible where they had not been before, but stated rather that they were admissible under current law.[5] Appellant himself admits that we decided *Turek* on the basis of existing law; he concludes that therefore *Turek* need not be held retroactive to apply to the instant case and adds that, because he "has agreed all along" that the results are admissible, the trial court's comment on *Turek* concerned a "non-issue." [6]

Third, appellant emphasizes the *Turek* Court's comment that "it is axiomatic that a foundation must be laid" before evidence is admitted. 312 Pa.Super. at 164, 458 A.2d at 565. Appellant then states that the foundation requirement is not a new rule of law, and again concludes that we need not hold *Turek* retroactive.

Appellant's only genuine ground for seeking retroactive application of *Turek* seems to be that decision's list of guidelines for a proper foundation for HLA results. However, he once more states that retroactivity is unnecessary, because in his case no foundation was presented and ample precedent requires a foundation. He nonetheless concludes that he was "entitled" to *Turek* and that the hearing court's refusal to apply its holding was erroneous. For the reasons above set forth, we reject that conclusion.[7]

Finally, appellant asserts that the hearing court's finding of paternity was against the weight of the credible evidence. In reviewing this argument, we must defer and

---

5. Before *Turek*, two separate opinions from our Court focused on the desirability of HLA testing over the former red-blood cell typing method. *See Hummel*, 301 Pa.Super. at 285, 447 A.2d at 970 (Beck, J., concurring), and *In re Mengel*, 287 Pa.Super. 186, 200–01, 429 A.2d 1162, 1170 (1981) (Spaeth, J., concurring).

6. The trial court's "comment" on *Turek* was simply that that case was decided after defendant's post-trial motions, and that, until it is held to be retroactive, it does not affect the present case.

7. We also caution counsel that appellate advocacy is hindered when appellate briefs raise arguments and then dismiss them. Issues should be raised only when counsel in good faith believes that they are meritorious; otherwise, neither the interests of judicial economy nor those of the attorney-client relationship are well-served.

give great weight to the hearing court's appraisal of credibility, since that court observed the witnesses during their testimony. *Commonwealth ex rel. Ermel v. Ermel,* 259 Pa.Super. 219, 223, 393 A.2d 796, 798 (1978); *Burston v. Dodson,* 257 Pa.Super. 1, 390 A.2d 216 (1978); *In the Interest of Clouse,* 244 Pa.Super. 396, 368 A.2d 780 (1976) (allocatur denied). We may disregard or overrule the hearing court's determinations of credibility and the weight of the evidence only in clear cases, when we find that those determinations were manifestly erroneous, arbitrary and capricious, or flagrantly contrary to the evidence. *Delahanty v. First Pennsylvania Bank, N.A.,* 318 Pa.Super. 90, 464 A.2d 1243 (1983); *Glickman Real Estate Development v. Korf,* 300 Pa.Super. 202, 446 A.2d 300 (1982); *Shacreaw v. Shacreaw,* 248 Pa.Super. 223, 375 A.2d 68 (1977); *Leibowitz v. Ortho,* 224 Pa.Super. 418, 307 A.2d 449 (1973). In addition, the plaintiff in a civil paternity suit need prove the claim only by a preponderance of the evidence. *Commonwealth ex rel. Johnson v. Peake,* 272 Pa.Super. 340, 415 A.2d 1228 (1979); *Commonwealth ex rel. Lonesome v. Johnson,* 231 Pa.Super. 335, 338, 331 A.2d 702, 704 (1974).

Beside passing on credibility, the hearing court considered its examination of the child and comparison of her traits to appellant's, a valid comparison in paternity cases. *Lonesome,* 231 Pa.Super. at 338, 331 A.2d at 704.

Upon review of the record, we find that the hearing court's determinations on credibility were not manifestly erroneous, arbitrary and capricious, or flagrantly contrary to the evidence.

AFFIRMED.

BECK, J., files a dissenting opinion.

BECK, Judge, dissenting:

I respectfully dissent from the majority opinion. I would hold that Section 6134 of the Uniform Act on Blood Tests to Determine Paternity (Uniform Act) *requires* the court to provide an expert witness to interpret and attest to the

accuracy of blood tests in a paternity proceeding. 42 Pa.C. S.A. § 6134. I would further hold that the parties may not waive this requirement.

Section 6134 of the Uniform Act provides that "[t]ests *shall* be made by experts ... who *shall* be appointed by the court. The experts *shall* be called by the court as witnesses ... and *shall* be subject to cross-examination by the parties." (Emphasis added.) This language is a mandatory direction to the court, *requiring* it to call an expert witness, and is not, as the majority contends, a grant of authority to the court, merely *permitting* it to call an expert in its discretion.

The majority maintains that "where a statute's mandatory language pertains to the action of a court, it is usually a grant of authority." Maj. op. at 20. However, this generalization as applied to the case sub judice does not find support in the cases cited by the majority.[1]

---

1. The majority cites three cases, *Becker v. Lebanon, etc., St. Ry. Co.,* 188 Pa. 484, 41 A. 612 (1898), *In re Anderson's Appeal,* 215 Pa. 119, 64 A. 443 (1906) and *Morrison v. Unemployment Compensation Board of Review,* 141 Pa.Super. 256, 15 A.2d 391 (1940), each of which require a more limited application than that granted by the majority. Essentially, *Becker* holds that in the face of a statutory directive that the court *shall* grant an injunction, "[t]he injunction is not to be granted unless a proper case for injunction be made out, in accordance with the principles and practice of equity." *Id.* 188 Pa. at 496, 41 A. at 613. In *Anderson,* the statute provided that "any officer or officers failing to give the security required by the first section of this act within one month after his election, then his or their offices *shall* be declared vacant...." (Emphasis added). *Anderson* held that a court *could* inquire into the circumstances surrounding failure to post a bond because it was not the purpose of the statute to oust newly elected officials who failed to post the required bond through *no fault of their own.* To hold otherwise would clearly have been contrary to the purpose of the statute as indicated by the other sections of the Act and by case law; a similar situation does not exist in the case sub judice. Finally, *Morrison* concerns a statute directing the Board to hear appeals within a specified period of time. It held that an automatic verdict for appellant in the event that the Board fails to comply with the time constraint is improper under the statute. Each of these cases grants limited discretion to a court in the face of a directive statute where to do otherwise would render a grave injustice. This clearly does not hold true in the case sub judice. Requiring blood tests in paternity proceedings serves only to enhance the truth-finding process.

Recent case law clearly establishes that the word "shall" in a statute is to be construed as a mandatory, rather than a permissive, direction. *Burrows v. State Employees' Retirement Board,* 76 Pa.Commw. 84, 463 A.2d 106 (1983) (statute stating that the Retirement Board "shall" have applicant examined was held to be a *mandatory* instruction to the Board); *see also Board of Pensions and Retirement of City of Philadelphia v. Hodge,* 72 Pa.Commw. 59, 455 A.2d 1270 (1983); *City of Philadelphia v. Shapp,* 44 Pa. Commw. 303, 403 A.2d 1043 (1979).

Moreover, the majority's interpretation of Section 6134 would result in a superfluous grant to the court of authority it already possesses. The majority construes Section 6134 to *permit* the court to call experts, but the court has inherent power in any case to call experts where evidence beyond the common knowledge of the trier of fact must be evaluated. Therefore, it is nonsensical to interpret Section 6134 as simply allowing the court an opportunity to call expert witnesses.

The majority supports its construction of Section 6134 by noting that Section 6133 of the "Act ... allows paternity determinations to be made without blood tests," and that under section 6132(b)(3) and 6136 of the Act, "expert testimony is not the sole or paramount form of evidence used in paternity cases." Slip op. at 6. While these statements may be correct, it does not follow, as the majority would have us believe, that experts are not required once blood tests have been introduced into evidence.

The aforementioned sections of the Uniform Act to which the majority refers merely provide guidance to the court in evaluating evidence under specific circumstances. Section 6136, 42 Pa.C.S.A. § 6136, states that

if the court finds that the conclusions of all of the experts as disclosed by the evidence based upon the tests are that the alleged father is not the father of the child, the question of paternity ... shall be resolved accordingly. If the experts disagree in their findings or conclusions, the question shall be submitted upon all the evidence.

As the majority asserts, this section does require a paternity determination based upon *all* the evidence. However, a determination based upon all the evidence is necessitated only where the *experts disagree.* Thus, it is clear that Section 6136 *presumes* the testimony of experts where blood tests are introduced. Section 6136 then does not imply, as the majority suggests, that expert testimony is unnecessary under the Uniform Act; rather it reinforces the conclusion that Section 6134 *mandates* expert testimony where blood tests are introduced.[2] Section 6134 is specific as to the requirement of experts and the mandate of the section is not modified by other provisions of the statute which do not relate to the integrity and reliability of blood tests.

In mandating expert testimony under the Uniform Act, the legislature demonstrated its awareness that the complexity of scientific evidence in paternity determinations requires expert interpretation to assure a proper evidentiary evaluation. This court has similarly recognized the importance of expert testimony in various contexts such as those involving HLA blood test results. In holding HLA blood tests admissible, this court in *Turek v. Hardy,* 312 Pa.Super. 158, 458 A.2d 562 (1983), stated that "[w]hile we believe that ... the reliability of HLA testing has been established, we do agree with the Utah court's view that a

---

**2.** The majority also refers to Sections 6132(b)(3) and Section 6133 as support for its conclusion that expert testimony is not required by Section 6134 for the same reasons as stated above with regard to Section 6136. Logic does not support this conclusion. Section 6132(b)(3) is analogous to Section 6136 but applies to criminal proceedings; it allows the court to "direct a verdict of acquittal upon the conclusions of all the experts under the provisions of section 6136 (relating to effect of test results), otherwise the case shall be submitted for determination upon all the evidence." 42 Pa.C.S.A. § 6132(b)(3). Section 6133 allows the court to resolve the question of paternity against a party who refuses to submit to blood tests or "to enforce its order if the rights of others and the interests of justice so dictate." 42 Pa.C.S.A. § 6133. Again, this provision does not imply that expert testimony is not required where blood tests are introduced. Rather, Section 6133 pre-approves a specific judgment or order by the court in the instance where a party *refuses* to submit to blood tests.

foundation must be laid in each case." *Id.* at 565.[3] Establishing a proper foundation for blood test data necessitates expert testimony on, *inter alia,* the effect of racial and ethnic variables, factors affecting the test's accuracy, and proper procedures for performing the test. Thus, even in the absence of Section 6134's mandate, expert testimony is needed. *Turek.*

In addition, because I construe Section 6134 of the Uniform Act as a mandatory direction to the court to provide expert testimony, I would hold that the parties may not waive this requirement. In concluding that the requirement for expert testimony may be waived, the majority analogizes civil paternity suits to criminal cases. According to the majority, since criminal defendants may waive certain constitutional guarantees (*e.g.,* the right to a jury trial), paternity defendants in civil actions may do the same.

I find the majority's analogy inappropriate. In a criminal trial, the defendant may waive rights affecting solely his own interests. But the right to blood testing is not a right exclusive to any party in a civil paternity action. Section 6133 of the Uniform Act states that "the court upon its own initiative or upon suggestion made by or on behalf of any person whose blood is involved may, or upon motion of any party to the action …, shall order … blood tests." The nonexclusivity of the right to blood tests underscores the purpose of such evidence in a paternity suit, *i.e.,* the enhancement of the truth-finding process. Therefore, I conclude that in a case where blood tests have been conducted and evidence related thereto has been introduced into evidence, expert testimony regarding such evidence may not be waived. The truth-finding process is served only if experts are available to explain, support, or contest, *inter alia,* the blood testing procedures, the raw numerical data, and the meaning of the test results.

3. *Turek* allowed HLA blood tests to be evidence of the likelihood that a particular male is father of the child. Before *Turek,* blood tests were admitted only to exclude the alleged father from paternity. In the case sub judice, HLA blood tests were also introduced to show likelihood of paternity.

Assuming arguendo that the requirement for expert testimony could be waived, I would find that the stipulation made by appellant in the case sub judice does not constitute such a waiver. A stipulation must be construed according to the intent of the parties. *Longenecker v. Matway,* 315 Pa.Super. 411, 462 A.2d 261 (1983). Here, it is clear that appellant intended to predicate the court's use of the blood test results on the admission of expert testimony.

Appellant made the following statement when the tests were introduced at trial: "As indicated earlier in the record, we have no objection to the admissibility of the test, with this specific proviso: that we believe that it is a matter of statistical evidence as to the proper interpretation of the results. And absent testimony by an expert witness, these results do not have a legal significance." Record at 41. Clearly, the appellant agreed to the admissibility of the blood tests but did not agree to waive expert testimony.

For the foregoing reasons, I would remand for a new trial consistent with this opinion.