J-S70007-17

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| VIKAS GUPTA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| Appellee | : | |
| | : | |
| v. | : | |
| | : | |
| CONSOLIDATED PROPERTIES, LLC | : | |
| | : | |
| Appellant | : | No. 810 MDA 2017 |

Appeal from the Judgment Entered April 25, 2017
In the Court of Common Pleas of Cumberland County
Civil Division at No(s): 12-7444

BEFORE: GANTMAN, P.J., SHOGAN, J., and OTT, J.

MEMORANDUM BY GANTMAN, P.J.: **FILED NOVEMBER 21, 2017**

Appellant, Consolidated Properties, LLC ("Landlord"), appeals from the judgment entered in the Cumberland County Court of Common Pleas, in favor of Appellee, Vikas Gupta ("Tenant"), in this landlord-tenant action. We affirm in part, vacate in part, and remand for modification of damages.

In its opinion, the trial court set forth the relevant facts and procedural history of this case. Therefore, we have no reason to restate them. We add that the court denied Landlord's motion for reconsideration on April 19, 2017, and entered judgment in favor of Tenant on April 25, 2017. On May 18, 2017, Landlord filed a timely notice of appeal. On May 23, 2017, the court ordered Landlord to file a concise statement of errors complained of on appeal pursuant to Pa.R.A.P. 1925(b), and Landlord timely complied.

Landlord raises the following issues for our review:

[WHETHER THE TRIAL COURT ERRED WHEN IT DETERMINED] A LANDLORD [DOES NOT HAVE] AN OPPORTUNITY TO REMEDY AN ALLEGED DEFECT IN RESIDENTIAL RENTAL PROPERTY UNDER PENNSYLVANIA'S IMPLIED WARRANTY OF HABITABILITY?

[WHETHER THE TRIAL COURT ERRED WHEN IT DETERMINED] [TENANT] SUSTAIN[ED] HIS BURDEN OF PROOF THAT A PROPERTY VIOLATED PENNSYLVANIA'S IMPLIED WARRANTY OF HABITABILITY WHERE [TENANT]'S PHOTOGRAPHIC EVIDENCE WAS INCONSISTENT WITH HIS TESTIMONY?

[WHETHER THE TRIAL COURT ERRED WHEN IT DETERMINED] A WRITTEN, EXECUTED ACCORD AND SATISFACTION [DID NOT] BAR [TENANT] FROM PURSUING A CLAIM WHERE [LANDLORD] RETURNED THE SECURITY DEPOSIT AS CONSIDERATION?

[WHETHER THE TRIAL COURT ERRED WHEN IT AWARDED TENANT LOST WAGES?]

(Landlord's Brief at 5).

After a thorough review of the record, the briefs of the parties, the applicable law, and the well-reasoned opinion of the Honorable Merle L. Ebert, Jr., we conclude Landlord's issues one through three merit no relief. The trial court opinion comprehensively discusses and properly disposes of the questions presented. (*See* Trial Court Opinion, filed July 17, 2017, at 5-10) (finding: **(1-2)** insects heavily infested apartment; Tenant and Tenant's wife credibly testified regarding degree of infestation; Tenant submitted documentary evidence showing insects remained in apartment after several extermination treatments and cleanings; Landlord failed to eliminate insect infestation for approximately one-third of lease period; evidence presented

at trial indicated Landlord had notice of insect infestation, and reasonable opportunity to remedy infestation, but failed to do so in reasonable time frame; degree of insect infestation prevented Tenant from using apartment for intended purpose of habitation; Tenant had reasonable concerns for health and safety of his family due to conditions inside apartment; record does not support Landlord's contention that trial court created separate standard of habitability between lower-income and higher-income rental housing; court properly found Landlord breached implied warranty of habitability and correctly awarded damages to Tenant; **(3)** first, no reasonable dispute existed between parties; Tenant was unable to live in residence due to insect infestation; Tenant did not breach lease agreement when Tenant vacated residence because apartment was uninhabitable; second, Landlord gave up nothing in consideration of accord and satisfaction; Landlord owed Tenant return of security deposit regardless of whether parties purportedly reached meeting of minds; finally, Tenant did not accept and retain Landlord's offered payment; Tenant initially accepted Landlord's return of security deposit but immediately rejected it; Tenant communicated his rejection to Landlord and refused to cash check; therefore, Landlord failed to establish accord and satisfaction).  We accept the court's analysis and affirm as to issues one through three on the basis of the trial court opinion.

On the issue on damages, however, the trial court and the parties

agree that the court should not have considered or awarded anything for lost wages and travel expenses. The trial court asks us to remand the case to allow the court to modify the judgment to remove the amount awarded to Tenant for lost wages and travel expenses. Accordingly, we affirm the trial court's decision in part; but we vacate the judgment in part and remand for modification of the damages to exclude lost wages and travel expenses.

Judgment affirmed in part and vacated in part; case remanded for modification of damages. Jurisdiction is relinquished.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 11/21/2017

VIKAS GUPTA,　　　　　　　　： IN THE COURT OF COMMON PLEAS OF
　　　　　PLAINTIFF　　　　　　： CUMBERLAND COUNTY, PENNSYLVANIA
　　　　　　　　　　　　　　　　　：
　　V.　　　　　　　　　　　　　：
　　　　　　　　　　　　　　　　　：
CONSOLIDATED PROPERTIES,　　　：
　　　　　DEFENDANT　　　　　　： NO. 2012-7444 CIVIL

## IN RE: OPINION PURSUANT TO PA. R.A.P. 1925(a)

In this civil action, Consolidated Properties (hereinafter, "Appellant") challenges the verdict entered in favor of Appellee, in the amount of $3,677.66 plus costs and interest, following a non-jury trial in this matter. The verdict was recorded on November 30, 2016, and Appellant filed a timely post-trial motion for post-trial relief on December 12, 2016. That motion was denied by an Opinion and Order of Court dated April 19, 2017. Appellant filed a timely Notice of Appeal on May 18, 2017, and a statement of errors complained of on appeal on June 12, 2017. Appellant's three pages of bases for appeal are as follows:

1.　　The decision of this Court was erroneous as a matter of law.

2.　　The Court's Opinion awarded damages for lost wages.

3.　　There is no basis in law for such an award.

4.　　There is no contractual basis for such an award.

5.　　There is no basis in the Lease for such an award.

6.　　The Court failed to apply properly the burden of proof required of Plaintiff.

7.　　The Court's finding of a breach of warranty of habitability is inconsistent with Pennsylvania law presented at trial and in Defendant's trial brief.

8.　　The Court applied a standard for the warranty of habitability that goes beyond existing Pennsylvania law.

9.　　The Court's Opinion appears to confuse the warranty of habitability with concepts related to marketability.

1



2012-07444-0039 F#1184916 Fee:$0.00
OPINION

Rcpt Z145730  7/17/2017 10:39:05 AM
David D. Buell, County Prothonotary

39

10. The Court applied a higher standard for the warranty of habitability because the rental unit in question was higher priced than many other units in the market.

11. The warranty of habitability and the standards for habitability in a rental unit are not dependent on the rental rate.

12. The Court's Opinion would create separate standards of habitability between more expensive housing and affordable housing.

13. The Court's Opinion would result in discriminatory standards for the warranty of habitability.

14. The Court failed to apply the law regarding the accord and satisfaction entered into between the parties and introduced at trial.

15. The Court's findings were inconsistent with admissions made by Plaintiff during trial, including admissions regarding the accord and satisfaction and admissions regarding Plaintiff's claimed damages.

16. The Court refused to find the existence of an accord and satisfaction due to post-accord conduct by Plaintiff, including Plaintiff's failure to cash the check, even though the payment rendered the money unavailable to Defendant, thus constituting valid consideration.

17. The Court refused to find the existence of an accord and satisfaction because any such finding would prevent a tenant from pursuing warranty of habitability claims.

18. Contrary to such a holding, accord and satisfaction is available to any party seeking to settle any claim, including habitability claims.

19. The Court based its finding on the assumption that there was no genuine dispute that would justify withholding the security deposit, contrary to the disputed facts in this case.

20. Defendant's position at the time of the accord and satisfaction was that Plaintiff was not justified in breaking the lease, thus justifying the withholding of the security deposit and creating a legitimate dispute for the purpose of accord and satisfaction.

21. Accord and satisfaction is a viable alternative available to all parties to settle disputed issues, including disputed factual issues.

22. The Court's holding rendered such an alternative unavailable.

2

23. With regard to the Court's findings regarding breach of implied warranty of habitability, accord and satisfaction and damages, the Court's findings were:
   (a) based on insufficient evidence;
   (b) against the weight of the evidence;
   (c) contrary to the law.

24. The Court's findings with regard to the existence of insects at the premises in question were against the Plaintiff's own evidence, which evidence revealed photographs only of one or two insects in any one photograph.

25. The Court's reliance upon testimony of Defendant's expert for the proposition that insects remained in the premises many days after the initial treatment is not supported by the expert's actual testimony.

26. Defendant's expert's repeat visits were for preventative maintenance and for treatment of the outside of the premises.

27. Defendant's expert contradicted Plaintiff as to the number of insects and the extent of any problem.

## Statement of Facts and Procedural History

The parties entered into a written, short-term lease agreement on July 10, 2012. The lease was envisioned to cover a very short, ninety day term, from July 16, 2012, until October 15, 2012, for the upper level of a fully furnished house in what has been stylized as an upscale housing arrangement. Appellee was to pay Appellant the sum of $1,690.00 per month, in addition to a $900.00 security deposit, for the duration of the lease. Appellee did in fact pay Appellant $1,690.00 in advance rent, the $900.00 security deposit, and an additional $112.66 in order to move in early.

Appellee, his wife and their young child arrived at the apartment on Friday, July 13, 2012, and unpacked their vehicle. Appellee was then required to immediately depart for a business commitment in North Carolina. That evening, Appellee received a phone call from his wife, informing him that the apartment was overrun with then-

3

unknown insects, later identified as millipedes. Appellee immediately abandoned the business trip and returned from North Carolina that night. Appellee reported to Appellant on Sunday, July 15, 2012, that the residence was infested with insects, that he was concerned that the still-unknown insects posed a health hazard to his toddler, and that he wished for Appellant to resolve the infestation as soon as possible.

On Monday, July 16, 2012, at approximately 6:00 A.M., Appellee informed Appellant that he was moving his family out, and that he would not return until the insect infestation ended. Appellee cited his concern that he and his wife killed at least one hundred and thirty insects since Friday evening, and that the infestation did not seem to be slowing down. Appellant assured Appellee that the matter would be resolved, and dispatched an exterminator to treat the property that same day.

The exterminator treatments between July 16 and August 10, 2012, failed to cure the problem. Appellee was told on more than one occasion that the problem was resolved and Appellee inspected the property several times, finding insects to still be present. In light of the ongoing insect infestation, and fears about exposing his toddler to both the insects and the pesticides sprayed on the premises, on July 28, 2012, Appellee signaled that he would not move back into the property. Appellee requested the return of the advance rent and the security deposit, which Appellant refused. Eventually, Appellant agreed to return Appellee's security deposit only, on the condition that Appellee sign a release of liability. Appellee ultimately did sign the release, then communicated his rejection of the document and did not cash the check for the security deposit. Appellee brought an action before the magisterial district judge in order to recover both the security deposit and the advance rent.

4

Appellee prevailed before the magisterial district judge and received a verdict in the amount of $2,217.66, prompting Appellant to appeal that decision. A Board of Arbitrators was appointed to hear the matter. They found for Appellee in the amount of $3,811.24. Appellant appealed that decision to this court, and a *de novo* hearing was held on November 03, 2016. By Order of Court dated November 30, 2016, this court found in favor of Appellee in the amount of $3,677.66 plus costs and interests. That sum encompassed $1,690.00 for the advance rent paid by Plaintiff, $900.00 for the security deposit, $860.00 for Appellee's lost wages, $112.66 for Appellee's early move-in fees, and $115.00 for Appellee's filing fees at the magisterial district judge level. Appellant filed the instant motion for reconsideration on December 12, 2016, and oral arguments were scheduled for March 15, 2017. Due to inclement weather the oral arguments were rescheduled and held on March 28, 2017. Appellant's motion for reconsideration was denied, leading to the instant appeal and prompting this Opinion pursuant to Pa. R.A.P. 1925(a).

## Discussion

To begin, this court notes that Appellant presents twenty-seven enumerated paragraphs and three sub-paragraphs containing errors complained of on appeal. As stated by the Honorable Ruggero J. Aldisert of the United States Court of Appeals for the Third Circuit:

> When I read an appellant's brief that contains ten or twelve points, a presumption arises that there is no merit to any of them. I do not say that it is an irrebuttable presumption, but it is a presumption that reduces the effectiveness of appellate advocacy...[1]

---

[1] Aldisert, The Appellate Bar: Professional Competence and Professional Responsibility – A View From the Jaundiced Eye of One Appellate Judge, 11 Cap. U.L. Rev. 445, 458 (1982).

5

Here, in light of the plethora of errors raised on appeal, this court will attempt to consolidate the issues raised where possible. Where any of Appellant's issues have been inadvertently missed, this court will rest on the record, such as it is in this case, including the Opinion and Order of Court dated April 19, 2017. It should be noted that no transcript of the proceedings was prepared in time for this opinion, due to Appellant's failure to comply with the requirements of Pa. R.J.A. 4007.[2]

### a. Breach of the implied warranty of habitability

At the core of Appellant's issues complained of on appeal is the contention that Appellee failed to demonstrate a breach of the implied warranty of habitability. In order to sustain an action for a breach of the implied warranty of habitability, a plaintiff must prove that notice of the defective conditions was given to the defendant, that the defendant had a reasonable opportunity to correct the defects, and that the defects were not corrected. Fair v. Negley, 257 Pa. Super. 50, 54-55, 390 A.2d 240 (Pa. Super. 1978). The defect must be of the kind and nature which would prevent the use of the property for its intended purpose to provide fit habitation. Glickman Real Estate Development v. Korf, 446 A.2d 300, 302 (Pa. Super. 1982).

Here, the residence in question was heavily infested with insects. Appellee and his wife credibly testified regarding the size of the infestation, with Appellee and his wife personally killing well in excess of one hundred insects without making a dent in the swarm. Circumstantial evidence supported this conclusion; notably, within forty eight

---

[2] Notably, while Appellant did file Requests for Transcript with the Prothonotary's office on May 18, 2017 and June 12, 2017, Appellant failed to properly comply with the filing and service requirements of Pa. R.J.A. 4007(b), and failed to post a deposit pursuant to Pa. R.J.A. 4007(D)(1) or allege an economic hardship or that the court or county should be responsible for the transcript cost, pursuant to Pa. R.J.A. 4007(E) or (F).

6

hours of moving in Appellee cancelled his business activities in North Carolina and drove back to Pennsylvania to help his family move out. Documentary evidence submitted by Appellee proved that even after pest control treatments at the property, and after Appellant's representatives meticulously cleaned and inspected the residence several times, insects were still present inside the residence.[3] In short, Appellee left the residence due to a heavy insect infestation. Even after weeks of pest control treatments, and regular cleaning of the residence by Appellant, the infestation was not completely resolved. Appellee's lease for the property was for only ninety days, meaning that Appellant failed to correct the insect infestation after one-third of the lease period passed.

Appellant also contends that this court erred by creating separate standards of habitability between lower-income and higher-income rental housing, which would lead to discriminatory standards for the warranty of habitability in the April 19, 2017, Opinion and Order of Court. That contention is not borne out by the record in this case. Instead, this court noted that the facts that this case presented were that the premises that Appellee contracted for was not delivered in a habitable condition. That notation had no impact on the ultimate conclusion that the apartment in question was infested with insects and constituted a breach of the implied warranty of habitability.

Due to the facts determined after trial in this matter, this court properly concluded that Appellant had notice of the insect infestation, had a reasonable opportunity to cure the defect and was unable to cure the infestation within a reasonable time frame. The insect infestation was such that Appellee was unable to utilize the property for its intended purpose, human habitation. Appellant's argument that Appellee could have

---

[3] See, e.g., Plaintiff's Exhibits 3-10.

7

resided in the residence with his wife and toddler while it received exterminator treatments was not persuasive to this court. This court especially concluded that Appellee had reasonable concerns for the health and safety of his toddler by remaining in the residence.

Further, this court did not find Appellant's argument persuasive that Appellee was under some obligation to perform a detailed census of the insects present, or spend time arranging for them to be photographed, rather than simply killing them and disposing of them. Nor was it a compelling argument that the failure of Appellee to do so should have been construed against him. Finally, Appellant's representative provided testimony that an alternative residence would not be available for Appellee for at least six weeks, or until roughly half of the lease period passed. In light of such, this court properly found that the implied warranty of habitability was breached by Appellant and that Appellee was entitled to recover damages.

### b. Accord and satisfaction

Appellant's arguments regarding an accord and satisfaction were not compelling to this court. As stated by the Supreme Court:

> Our cases make clear that the burden was on the appellant to establish "accord and satisfaction." The same elements are necessary to show the existence of an "accord and satisfaction" as to show the existence of any contract. There must be a "meeting of the minds." There must be consideration, which in the case of an accord and satisfaction, means that a reasonable dispute exists between the parties. As we explained in Law v. Mackie, 373 Pa. 212 at 221, 95 A.2d 656 (1953), citing Lucacher v. Kerson, 355 Pa. 79, 48 A.2d 857 (1946): "Where there is a dispute or disagreement between the debtor and creditor as to their respective rights, a payment tendered in full satisfaction of the other's claim operates as an accord and satisfaction if the payment is accepted and retained. On the other hand, in

8

> the absence of such a controversy, the payment of a part of the amount due under a contract, even though accepted by the creditor as in full satisfaction of the debt, does not work a discharge of the entire indebtedness, for the reason that there is no consideration for the creditor's agreement that it should so operate."

Brunswick Corp. v. Levin, 442 Pa. 488, 491, 276 A.2d 532 (Pa. 1971) (internal citations omitted in part, emphasis added).

In the instant case, this court found that Appellant failed to meet its burden to establish an accord and satisfaction. First, there was not a reasonable dispute between the parties. Appellee was not able to reside in the residence due to the heavy insect infestation which Appellant was not able to cure within a reasonable amount of time, as discussed above. Notably, the record reflects that Appellant had an extermination treatment performed at the residence after it informed Appellee that the residence was insect free.[4] In order to create a dispute between the parties, Appellant argued that Appellee breached the lease by vacating the residence. It would be patently unreasonable for this court to accept Appellant's argument that Appellee breached the lease, when the reason that Appellee left the residence was because the residence was uninhabitable due to the insect infestation. To accept the Appellant's position, one would have to find that after paying over $2,702.66 for what was described as an upscale apartment for 90 days and having moved his family into the dwelling, the Appellant was so unreasonable and arbitrary that he would abandon his business activities, return home from North Carolina, undertake the incredible hassle of relocating his family all because of some unfounded claim of insect infestation. As a matter of fact, this Court found that explanation absurd. Because it would be unreasonable to

---

[4] See, e.g., Defendant's Exhibit 2, at 3 (wherein exterminator services were invoiced for August 10, 2012), see also Plaintiff's Complaint at ¶37.

9

conclude that Appellee breached the lease, this court cannot find that there was a reasonable dispute between the parties. Therefore, there cannot be an accord and satisfaction in this case.

Second, it would be unreasonable for this court to accept Appellant's position that there was some consideration that Appellant gave up in order for there to be a meeting of the minds between the parties. Appellant's position for this argument is, again, based on the unreasonable premise that Appellee breached the lease by leaving an uninhabitable residence. Because the underlying dispute was inherently unreasonable, Appellant's sole consideration was to offer to return a security deposit that was already legally due and owing to Appellee. See 68 P.S. §250.512. Because the security deposit was already due and owing to Appellee, Appellant gave up nothing in consideration of an accord and satisfaction. Therefore, there was no accord and satisfaction.

Finally, the payment offered by Appellant was not accepted and retained. Appellee initially accepted the payment, then immediately rejected it, communicated that rejection to Appellant and refused to cash Appellant's check. As such, this court properly concluded that Appellant did not meet its burden to demonstrate the existence of an accord and satisfaction, and should properly be affirmed on appeal.

c. Lost wages

On appeal, Appellant correctly contends that the $860.00 award for lost wages and travel expenses was improper. At trial, counsel for Appellee agreed with Appellant's objection that these damages were not properly available for consideration by this court in this lawsuit. As such, the damages for lost wages and travel expenses should not

10

have been awarded. Therefore, this case should properly be remanded for a modification of the damages awarded to Appellee by removing $860.00 from the judgment entered against Appellant.

## Conclusion

Appellee and Appellant contracted for the short-term rental of an apartment. Upon moving into the apartment, Appellee discovered that it was infested with millipedes and uninhabitable. After moving out, Appellant refused to return Appellee's security deposit and rent, despite Appellee being unable to reside in the premises due to the insect infestation. This court properly concluded that the insect infestation was of a size and duration as to constitute a breach of the implied warranty of habitability, and that the breach existed from day one of the lease. The record reflects that Appellee and his wife killed in excess of one hundred insects over the course of two days without diminishing the size and scope of the infestation, and the record reflects that the premises was still receiving extermination treatments up to one month after Appellee's scheduled move-in date. This court further concluded that there was no accord and satisfaction present in this case, as there was no reasonable dispute between the parties, no consideration offered on the part of Appellant, and no acceptance and retention of the payment by Appellee. Finally, the amount of the damages awarded should be modified to remove the improper inclusion of $860.00 in lost wages and travel expenses for Appellee.

By the Court,

_____
M. L. Ebert, Jr.,                    J.

11

Douglas C. Lovelace, Jr., Esquire
Attorney for Plaintiff

David J. Lanza, Esquire
Attorney for Defendant

Copies Mailed
7/17/17